MASSEY et al. v. FISHER.

(Circuit Court, E. D. Pennsylvania. May 4, 1894.)

1. BANKS—INSOLVENCY—TRUST DEPOSIT.
Where an indorser pays a note to a bank, and takes a receipt containing an order for a surrender of the note on return of the receipt, the relation between the bank and the indorser is not that of debtor and creditor, but is a fiduciary relation, entitling the indorser, on the bank becoming insolvent without applying the money on the note, or procuring its surrender, to have the assets in the hands of its receiver applied in payment thereof.

2. SAME.
The fact that the money was not marked, and, by a mingling with other funds of the bank, lost its identity, does not affect the right to recovery in full, if it can be traced to the vaults of the bank, and it appears that a sum equivalent to it remained continuously therein until removed by the receiver.

Suit by J. R. Massey & Son against Benjamin F. Fisher, receiver of the Spring Garden National Bank. Decree for complainants. ·

Charles Y. Audenreid and Frank P. Prichard, for plaintiffs.
David H. Stone, for defendant.

BUTLER, District Judge. There is no controversy about the facts; and the plaintiffs' statement may therefore be adopted:

"On February 3, 1891, J. R. Massey & Son, who were depositors with the Spring Garden National Bank, indorsed and had discounted by the bank a note, dated February 2, 1891; made by Samuel Young to the order of Ephraim Young for $1,225, at four months, which had been indorsed by the payee and by one Edward Phair. This note fell due June 5, 1891. On February 17, 1891, the Spring Garden National Bank deposited the note with the clearing-house committee of the clearing-house association of the banks of Philadelphia in substitution for certain other notes then matured or about to mature, which had theretofore been pledged to secure advances made to the bank by that committee. On April 30, 1891, Frank H. Massey, one of the complainants, being ignorant that the bank no longer held the Young note, called at the office of the bank and stated to the cashier that he desired to pay it. The cashier sent a clerk to fetch the note, but the latter returned without it and informed him that it had been delivered to the clearing-house committee. The cashier then said to Mr. Massey: 'You pay me the money, and the next time we send to the clearing house we will take up this Young note and send it to you.' Massey thereupon gave the cashier $1,225 in bank bills, and was handed a receipt for them in the following form:

" 'The Spring Garden National Bank,
" '12th and Spring Garden Streets,
" 'Philadelphia, Apr. 30, 1891.
" 'Received of J. R. Massey & Son twelve hundred and twenty-five ($1,225) dollars, being in full payment of note signed Edward Phair for that amount, due June 5/91, said note to be handed Messrs. Massey upon the return of this receipt. H. H. Kennedy, Cash.'

"The money thus received by the cashier was handed by him to the note clerk of the bank, and he, on the same day, transferred it to the receiving teller, by whom it was put into the drawer with the other money of the bank in his possession, and on the next morning turned over in bulk with other moneys to the bank's paying teller. On the diary of the bank, and on its book of bills discounted, credit entries were made indicating that the Young note had been paid. The bank, however, did not take up the note. On May

8, 1891, the Spring Garden National Bank suspended payment, and its assets were taken possession of by the bank examiner, who on June 1, 1891, transferred them to Benjamin F. Fisher, the receiver appointed for the bank by the comptroller of the currency. Among the other assets which came into the hands of the bank examiner on the failure of the bank was the sum of $34,042.73 in bills, silver dollars and fractional currency, which sum, less about $1,000 paid out by him for wages, etc., was turned over to the receiver. At no time between April 29, 1891, and the day on which it closed its doors, did the bank have on hand in cash less than $24,000. On June 17, 1893, judgment was entered against the complainants in favor of the clearing-house committee, in an action instituted by the latter for collection of this note, in court of common pleas No. 4 for the county of Philadelphia, of December term, 1892, No. 881, for the amount of $1,377.50, and this judgment, with interest and costs, was paid by the complainants November 9, 1893."

The plaintiffs claim that the transaction established a fiduciary relation between the parties, while the defendant claims that it established the relation of debtor and creditor only. If the question was new, its proper solution might be open to doubt. Even in such case however, I would adopt the plaintiffs' view. The money was delivered and received to extinguish the note. Neither party contemplated that the bank might use it for another purpose, leaving the note outstanding, and the plaintiffs' liability unextinguished. Such application of it therefore, would be a violation of duty, and a fraud.

But the question is not new; it arose, and was decided, in People v. City Bank of Rochester, 96 N. Y. 32. The facts there were substantially like those before us. It is true the check in that case was drawn in terms, to pay the note. This, however, is an immaterial difference. It is as plain here as it was there that the money was delivered and received to take up the note. In Peak v. Ellicott, 30 Kan. 156 [1 Pac. 499], the facts were identical with those before us. In each of these cases it was held that the transaction established a fiduciary relation between the parties.

The bank having failed to apply the money to the note can it be recovered from the receiver? His counsel thinks not, because the bank placed the money in its vaults with other money of its own, whereby its identity was lost. Why should this wrongful act defeat the plaintiffs' right? Nobody is injured by allowing the plaintiffs to take the amount from the deposit. The receiver and creditors stand on no higher plane than the bank, and can no more assert that it was the bank's money than the bank could. It is true they are entitled to all the bank's property; but this was not its property. It is not important that the plaintiffs' money bore no mark, and cannot be identified. It is sufficient to trace it into the bank's vaults, and find that a sum equal to it (and presumably representing it), continuously remained there until the receiver took it. The modern rules of equity require no more. Knatchbull v. Hallett, 13 Ch. Div. 696; National Bank v. Insurance Co., 104 U. S. 54; Bank v. King, 57 Pa. St. 202; Stoller v. Coates, 88 Mo. 514; McLeod v. Evans, 66 Wis. 401 [28 N. W. 173, 214]; People v. City Bank of Rochester, 96 N. Y. 32; Bank v. Weams (Tex. Sup.) 6 S. W. 802; Harrison v. Smith, 83 Mo. 210; Beech, Eq. Jur. § 285; Fisher v. Night, [9 C. C. A. 582,] 61 Fed. 491.

I have not overlooked Bank v. Dowd, 38 Fed. 172. If that case can be distinguished from Knatchbull v. Hallett, as the judge who decided it believes, then it can as readily be distinguished from this. If it cannot, with all my respect for that distinguished judge, I must disregard it.

There is a class of cases—to which Bank v. Beal, 49 Fed. 606, and Bank v. Armstrong, 148 U. S. 50 [13 Sup. Ct. 533], belong—in which it is held that although the relations of the parties there involved, were in the beginning fiduciary, they ceased to be so when the agent commingled the money with its own. These, however, were cases where commercial paper was delivered for collection and credit, and where the collection and credit consequently terminated the agency. The commingling and use of the money were in pursuance of the understanding; and upon this construction of the transaction these decisions rest. The distinction is noticed in Knatchbull v. Hallett, 13 Ch. Div. 702.

The bill is therefore sustained and a decree may be drawn accordingly.