### BOONE COUNTY NAT. BANK v. LATIMER et al.

(Circuit Court, W. D. Missouri, C. D.    March 21, 1895.)

BANKS AND BANKING—INSOLVENCY OF COLLECTING BANK—TRUST FUNDS.

A bank received a note for collection and remittance, but, instead of remitting as directed, credited its correspondent with the proceeds, and shortly thereafter failed. At the time of failure the cash on hand was less than the amount of the collection, but the receiver realized from the assets sufficient to pay all preferred claims. There was no proof that the proceeds of the note formed part of the assets converted into money by the receiver. *Held*, that the lien on the assets of the bank for the trust funds converted was limited to the amount of cash on hand at the time of the failure, the presumption of law being it was the residuum of the trust money.

Bill in equity brought by the Boone County National Bank against W. A. Latimer, receiver of the First National Bank of Sedalia, and the First National Bank of Sedalia.

This is a bill in equity to have claims of the complainant bank against the respondent bank declared a trust fund, and for preference in the distribution of the assets in the hands of the receiver. The case is submitted upon an agreed statement of facts, which is substantially as follows: (1)

The complainant, on March 30, 1894, sent to the First National Bank of Sedalia, Mo., for collection and remittance, a note it held against Jenney Bros. for $1,000 due April 8, 1894. Jenney Bros. paid on this note, on the 2d day of April, $787.69, which the First National Bank placed to the credit of the complainant, instead of remitting, as it was instructed to do. (2) The complainant in like manner sent to the First National Bank for collection a note it held for the sum of $1,500 against Henry Mueller and others, which was due January 2, 1894, and it was so sent for collection on the 29th day of December, 1893. On the 1st day of May, 1894, and three days before the bank failed, Mueller paid on this note the sum of $700, which the defendant bank placed to the credit of the complainant on its books, instead of remitting, as it had been directed. (3) That both of these notes were sent to the First National Bank, with instructions to collect the same, and remit to the complainant at Columbia, Mo. (4) When the said collections were made, the moneys received therefor were placed with other funds, constituting the cash assets of the bank, and to the extent thereof went to increase the volume of its assets and went into its business operations. (5) That when the receiver took possession of the said First National Bank he came into possession of $495.29 in money, and between the dates of the payments to it for complainant as aforesaid and the said 4th day of May, 1894, the day the bank closed, other large sums of money, besides these mentioned, had been paid into said bank, and distributed by it in the usual and ordinary course of its business operations, and that since the receiver had taken possession of the assets of the bank he has realized therefrom a large sum of money, and more than amply sufficient to pay all preferred claims against the bank. (6) Neither of the sums so collected by the defendant bank, or any part thereof, has been paid to the complainant.

Johnson & Montgomery, for complainant.
William S. Shirk, for defendant.

PHILIPS, District Judge (after stating the facts). It is not deemed important, even if the time were at my command, to enter into a review of the multitude of authorities bearing upon the vexed question discussed by counsel, as to the right of preference in the complainant. By the agreed statement of facts, the Sedalia bank was constituted by the Boone county bank its agent solely for the collection of the notes, and to remit the proceeds when collected to the principal. No authority was given to the agent to place such proceeds in its bank to the credit of the principal, so as to establish between them the relation of depositor and depositary, or that of creditor and debtor. The thing done by the Sedalia bank was a clear breach of trust,—a diversion of a trust fund,—whereby it became a trustee ex maleficio. The question to be decided is, does the fact that the precise fund thus diverted cannot be traced in kind and seized physically, or the fact that the precise fund cannot be traced into some other particular species of property into which it has been absorbed, destroy the right of the cestui que trust to a preference over the general creditors to have its claim first paid out of the general assets of the insolvent estate, when it appears, as in this case, that the trust fund has gone to swell the amount of such assets, and there are ample funds remaining to satisfy this trust-demand? The essential principle involved was grasped by Judge Story in this text:

"An agent is bound to keep the property of the principal separate from his own. If he mixes it up with his own, the whole will be taken, both at law and in equity, to be the property of the principal, until the agent puts

the subject-matter under such circumstances that it may be distinguished as satisfactorily as it might have been before the unauthorized mixture on his part. In other words, the agent is put to the necessity of showing clearly what part of the property belongs to him; and, so far as he is unable to do this, it is treated as the property of the principal. Courts of equity do not in these cases proceed upon the notion that strict justice is done between the parties, but upon the ground that it is the only justice that can be done, and that it would be inequitable to suffer the fraud or negligence of the agent to prejudice the rights of the principal." 1 Story, Eq. Jur. § 468.

Mr. Justice Bradley, in Frelinghuysen v. Nugent, 36 Fed. 239, with succinctness, displayed in a single sentence the successive steps in the development of equity in this relation:

"Formerly the equitable right of following misapplied money or other property into the hands of the parties receiving it depended upon the ability of identifying it, the equity attaching only to the very property misapplied. This right was first extended to the proceeds of the property, namely, to that which was procured in place of it by exchange, purchase, or sale. But if it became confused with other property of the same kind, so as not to be distinguishable without any fault on the part of the possessor, the equity was lost. Finally, however, it has been held as the better doctrine that confusion does not destroy the equity entirely, but converts it into a charge upon the entire mass, giving to the party injured by the unlawful diversion a priority of right over the other creditors of the possessor. This is as far as the rule has been carried."

This exposition is approved by the supreme court in Peters v. Bain, 133 U. S. 693, 10 Sup. Ct. 354. The pertinent part of the text is that "the better doctrine" is that the confusion of the trust fund with the mass of the possessor's other property does not destroy the equity in favor of the person wronged, but extends to the whole mass, so as to give to him "a priority of right over the other creditors of the possessor." The difficulty in sustaining the complainant's claim is that the agreed statement of facts does not show that the sum of $1,500, collected by the Sedalia bank for the complainant bank, stood mingled with other moneys of the insolvent bank on hand at the time the bank passed into possession of the receiver. On the contrary, the statement is that between the time of the collection of the money by the bank and the succession of the receiver the bank had collected various other sums of money, and distributed the whole sums collected by it, with the exception of $495.29. So that neither the whole sum collected by it for the complainant was on hand in kind, nor other moneys of the bank to that amount with which it had been mingled. That was precisely the reason given by the courts in the two cases above cited for refusing the relief asked. It did not appear "that the goods claimed were either in whole or in part the proceeds of any money unlawfully abstracted from the bank," and because the property against which it was sought to enforce the lien was bought from other creditors. While the agreed statement of facts recites that since the receiver took possession he has realized large sums of money from the assets of the bank, no inference is permissible that such assets were the product, in whole or in part, of the money collected for the Boone county bank. It is true that the general assets of the bank were

augmented to the extent of the absorption of the $1,500 diverted from the rightful owner, but in the absence of proof that the trust fund constituted a part of the remaining assets, so converted into money by the receiver after his succession, I feel constrained by the limit to the equity rule established by the federal supreme court not to extend the lien to the general estate. But in respect of the $495.29 in money, on hand when the receiver took charge, a different rule applies. The money collected by the Sedalia bank for the Boone county bank went into the cash account of the Sedalia bank just a few days prior to the placing of the bank in the hands of a receiver. As that was a trust fund, which the bank, in conscience and honesty, had no right to appropriate to its own use, the presumption of law is that in disbursing moneys it used its own funds, and that the residue of money left in its vaults was the trust fund, as there can be no indulgence of a presumption that a party has acted fraudulently, because of the maxim that, where the act of a party may be referred indifferently to one of two motives, the law prefers to refer it to that which is honest, rather than that which is dishonest. In National Bank v. Insurance Co., 104 U. S. 68, Mr. Justice Matthews clearly recognized this as equitable; for in referring to the ruling in Re Hallett's Estate (Knatchbull v. Hallett) 13 Ch. Div. 696, the Justice says:

"It was also held that the rule in Clayton's Case, 1 Mer. 572, attributing the first drawings out to the first payments in, does not apply; and that the drawer must be taken to have drawn out his own money in preference to the trust money; and in that particular Pennell v. Deffell [4 De Gex, M. & G. 372] was not followed."

To this extent I hold the equity rule should go, as its direct tendency is to enforce with rigor, where it can be done without prejudice to the just rights of third innocent parties, a recognition of the fiduciary obligations of agents. As said by Mr. Justice Matthews (page 70):

"This doctrine of equity is modern only in the sense of its being a consistent and logical extension of a principle originating in the very idea of trusts, for they can only be preserved by a strict enforcement of the rule that forbids one holding a trust relation from making private use of trust property."

No general creditor of the bank has any right to complain that the court seizes upon this fund found in the bank, within three or four days after the collection of complainant's notes, as presumptively the residue thereof, as no credit given by him to the defaulting bank was predicable of the existence of such assets, any more than if the bank at the time had stolen the amount of money from the Boone county bank. Decree will go enforcing the equitable lien of complainant to the extent of said $495.29, as a preferred creditor, and allowing the claim for the residue against the general assets of the bank as a general creditor.