[No. 1822. Decided September 27, 1895.]

J. W. BLAKE, *Plaintiff*, v. STATE SAVINGS BANK, *Defendant*; W. G. HOUSER, *Appellant*, v. J. S. WHITE-HOUSE, *Receiver*, *Respondent*.

APPEAL — AMOUNT IN. CONTROVERSY — TRUSTS — DEPOSITS IN INSOLVENT BANK — ACTION AGAINST RECEIVER.

An action against a receiver of an insolvent bank to recover the balance of a deposit therein on the ground that it was accepted by the bank after knowledge of insolvency, and that the bank thereby became a trustee, *ex maleficio*, of his funds, states a cause of equitable cognizance, and an appeal to the supreme court may be had from a judgment therein although the amount in controversy is less than two hundred dollars.

It is within the discretion of the court to permit claims against a receiver to be determined by petition in the original action in which he was appointed, or by an independent suit.

The general deposit of funds in a bank for the purpose of being checked against creates merely the relation of debtor and creditor between the bank and the depositor, and does not impress the funds with a trust character; and, even if such funds have been received by the bank after knowledge on its part of its insolvency, which it failed to communicate to the depositor, if they have been commingled with general funds of like character in the bank and are incapable of identification, the depositor will not be entitled to recover from the receiver of the bank the full amount of his claim in preference to other creditors.

*Appeal from Superior Court, Pierce County.*

*Lueders & Leo*, for appellant.

*Stiles, Stevens & Tillinghast*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—This was a proceeding instituted by the appellant, W. G. Houser, to rescind a contract of deposit with the State Savings Bank, and to secure an order of the court requiring the receiver of said bank to de-

liver to appellant a certain balance alleged to be due him from the bank.

On May 11, 1894, the State Savings Bank, having become insolvent, suspended business and, on the following day, at the suit of J. W. Blake, one J. S. Whitehouse was appointed receiver and immediately took possession of the assets of the bank. Thereafter the appellant filed a petition in the case of Blake v. The Bank, setting up, among other things which it is not necessary to mention, that said State Savings Bank was, on the 7th, 8th, 9th and 10th days of May, 1894, and long prior thereto, in failing circumstances, hopelessly insolvent and unable to meet its liabilities and obligations, and on said May 7, 1894, said bank and its president and cashier became and were well aware of its said failing circumstances and hopeless insolvency; that during all of said month of May, 1894, and long prior thereto, petitioner was a regular depositor with, and a customer of, said bank, and on April 30, 1894, had on deposit to his credit therein the sum of $443.46; that from and after said April 30, 1894, to and including May, 10, 1894, he made further deposits with said bank amounting in all to the sum of $986.46; that during said month of May, 1894, and up to and including May 11, 1894, he drew against his credits and deposits in said bank his check and drafts in the total amount of $1261.38, thereby leaving in said bank when it suspended business on May 11, 1894, a balance of $168.54 of the different deposits by him made therewith on and between May 7 and May 10, 1894; that during all the time petitioner dealt with said bank as aforesaid, he was wholly unaware of its failing circumstances and insolvency, and without means of informing himself of its condition, and always, until its suspension, fully believed said bank to be solvent; that although

said bank and its said officers on said May 7, 1894, became and were aware of the insolvency thereof, they, intending and contriving to cheat and defraud petitioner, wrongfully withheld and concealed from him all knowledge and information of its insolvent condition, and intending and contriving to cheat and defraud petitioner, did wrongfully and fraudulently receive and accept from him the various sums by him offered as deposits on and between May 7 and May 11, 1894; that said bank, although requested by petitioner to return to him said balance of money so deposited as aforesaid, has failed, refused and neglected to return the same or any part thereof; that on May 11, 1894, and while said bank still held the sum of $168.54 of the money so obtained from petitioner, said bank suspended payment and discontinued business and openly announced its insolvency; that one J. S. Whitehouse was by the order of the court duly appointed as receiver of said bank to wind up the affairs thereof, and on May 12, 1894, said Whitehouse duly qualified and entered upon the discharge of his duties as such receiver, and did as such receiver, on the 12th day of May, 1894, take into and still retains in his possession said sum of $168.54, money of petitioner so received and obtained from petitioner as aforesaid; that petitioner has since the appointment of said receiver demanded of him the return of said money, to-wit: said sum of $168.54, but said receiver has refused and declined to return the same or any part thereof to petitioner.

The respondent interposed a general demurrer to this petition, which was sustained by the court, and, appellant declining to further plead, a judgment was entered, dismissing the petition, from which judgment the petitioner appealed to this court.

It is insisted on behalf of the respondent that this court has no jurisdiction to review the judgment of the superior court because the amount involved is less than $200, and the true nature of the proceeding had was that of an action at law for money had and received. But, as it is not uncommon for courts to entertain suits in equity for such relief as is demanded in this proceeding, and as the petition purports to state a cause of action involving at least one question of equitable cognizance, we are not disposed to dismiss the appeal for want of jurisdiction.

It is also insisted that the petitioner should not have been allowed to present his claim against the receiver by petition, but should have been compelled to resort to an independent action, and it may be true that an ordinary action would have better subserved the interests of all parties than this proceeding. But the question does not appear to have been raised in the court below, and, besides, it seems that it is within the discretion of the court either to determine claims against a receiver by petition in the original action in which he was appointed, or by an independent suit. 20 Am. & Eng. Enc. Law, p. 251.

The next question is, do the facts stated in the petition entitle the appellant to an order directing the respondent to pay over to him the full amount of his claim in preference to other creditors, or in other words, does the petition state a cause of action. We are of the opinion that it does not, for the reasons, (1) that the specific fund sought to be recovered is not impressed with a special trust in favor of appellant, and (2) that it has not been identified and traced into the hands of the respondent.

It seems clear to us that when appellant deposited his money in the bank in the ordinary course of busi-

ness, the relation of debtor and creditor was at once created. The title to the money passed to the bank and appellant became the bank's creditor to the extent of the amount of deposits. That appellant considered the bank his debtor in the ordinary sense and not a mere trustee of his funds, is evident from the fact that from time to time he drew checks upon the bank for various amounts, which, when paid, he knew would be charged to his account. And none of the authorities cited by appellant announce a doctrine at variance with that which we have stated. But it is claimed by appellant that, by reason of the fraud practiced upon him by the officers of the bank in receiving his deposit and at the same time withholding and concealing from him the insolvent condition of the bank, the contract of deposit between him and the bank was void and the title to the moneys deposited never vested in the bank, and that it became simply a trustee, *ex maleficio*, of his funds.

The case of *Cragie v. Hadley*, 99 N. Y. 131 (51 Am. Rep. 9, 1 N. E. 537), is mainly relied on to support this contention, but we think the facts in the case at bar are such that that case is not an authority in favor of appellant. That was an action against a receiver to recover the proceeds of certain drafts sent to other parties by an insolvent bank for collection, and which were collected by them and the money paid into court. In delivering the opinion of the court, ANDREWS, J., said:

"The general doctrine that upon a deposit being made by a customer, in a bank, in the ordinary course of business, of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question. (*Commercial Bank of Albany v. Hughes*, 17 Wend. 94;

*Metropolitan Nat. Bank v. Loyd,* 90 N. Y. 530). The transaction in legal effect is a transfer of the money, or drafts or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money, drafts or checks, on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business. The further rule that one who has been induced to part with his property by the fraud of another, under guise of a contract, may, upon discovery of the fraud, rescind the contract, and reclaim the property unless it has come to the possession of a *bona fide* holder, is equally well settled, and does not at all depend upon the character of the wrong-doer, whether a corporation or natural person. . . . The right to a restoration in such case may be defeated by the acts or acquiescence of the defrauded party, or because the property has lost its identity and cannot be traced, or other persons have innocently acquired interests in ignorance of the fraud."

It will be seen from this quotation from that case that what the court really decided was that the reception of deposits by a bank under the circumstances stated was such a fraud upon the depositor as gave him a right to rescind the contract of deposit and reclaim the drafts or their proceeds, which, in that case, were easily distinguishable from the other assets of the bank. The conclusion of the court would no doubt have been different if the money had "lost its identity" and could not be traced.

In this case, the specific money sought to be recovered is not identified in any way, or even traced into the hands of the receiver. It is true that the $168.54 claimed by appellant, is said in the petition to be a part of the moneys deposited after May 7, 1894, but the assertion is a mere conclusion from facts previously

stated, and is, as a matter of fact, a *non sequitur*. It is positively alleged that during the month of May, 1894, and prior to the suspension of the bank, appellant deposited therein the aggregate sum of $986.46, and drew out upon checks the sum of $1,261.38, and if that be true we are unable to perceive how it can be said that any particular $168.54 is a part of the funds deposited after May 7, the time at which the officers of the bank became aware of its insolvency. When appellant's deposits became commingled with the general funds of like character in the bank the means of identification failed and the money could not be reclaimed. See Story, Equity Jurisprudence, § 1259; *Wilson v. Coburn*, 35 Neb. 530 (53 N. W. 466); *In re North River Bank*, 14 N. Y. Supp. 261; *City of Sommerville v. Beal, Receiver*, 49 Fed. 790.

If it had been delivered to the bank, not as a general deposit, but for a particular purpose, it would have been a trust fund in the first instance, and the title would not have passed to the bank; but even then it could not have been recovered without showing that it had gone into the hands of the receiver.

In the *Matter of Cavin v. Gleason*, 105 N. Y. 256 (11 N. E. 504), the petitioners delivered to one White, a private banker, $3,000, to be invested in a bond and mortgage. The investment was not made, but on the contrary, White spent all but $30 of the money so received in paying his personal debts and liabilities, and afterwards made an assignment for the benefit of his creditors. The remaining $30 was traced to the possession of the assignee, and the court held that an order directing the assignee to pay more than the $30 to petitioners was erroneous. In reference to the question under consideration the court said :

40— 12 WASH.

"The sole inquiry is, whether a case is made for equitable intervention in favor of the petitioners, in the administration of the insolvent estate. It is clear, we think, that upon an accounting in bankruptcy, or insolvency, a trust creditor is not entitled to a preference over general creditors of the insolvent, merely on the ground of the nature of his claim, that is, that he is a trust creditor as distinguished from a general creditor. We know of no authority for such a contention. The equitable doctrine that as between creditors equality is equity admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears in addition that there is some specific recognized equity founded on some agreement, or the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment. . . . But it is the general rule as well in a court of equity as in a court of law, that in order to follow trust funds and subject them to the operation of the trust, they must be identified."

And in the later case of *Atkinson v. Rochester Printing Co.*, 114 N. Y. 168 (21 N. E. 178), the court used this language :

"The fact that the defendant became a creditor of the insolvent bank through the fraud of its officers, and the bank a trustee *ex maleficio*, gave the defendant no right to a preference over other creditors unless it could trace and recover its property."

To the same effect are the cases of *Wilson v. Coburn*, and *In re North River Bank*, above cited, both of which are directly in point in this case.

The judgment must be affirmed.

HOYT, C. J., and SCOTT, GORDON and DUNBAR, JJ., concur.