[No. 11242.    Department One.    August 28, 1913.]

JOHANNA PAULINA CARLSON et al., *Respondents* v. M. B. KIES, as Receiver etc., *Appellant*.[1]

BANKS AND BANKING—DEPOSITS — SPECIAL DEPOSITS — LIABILITY. There was a special, and not a general deposit, which the bank holds as a trustee and not as a general debtor, notwithstanding that the bank commingled it with general funds, where it appears that the administrator of an estate took money belonging to heirs to the bank, stating that it was for safe keeping until the return of vouchers when it was to be forwarded to the heirs by bank drafts, receiving from the cashier a receipt reciting that the money was "to be held until receipts are received from heirs.    Then same to be forwarded by bank drafts."

[1]Reported in 134 Pac. 808.

BANKS AND BANKING—INSOLVENCY—RECOVERY OF SPECIAL DEPOSITS. The receiver of an insolvent bank is liable for a special deposit, wrongfully commingled by the bank with its general funds, although the money cannot be identified, where an equal amount in cash remained in the bank until it suspended and passed to the receiver.

Appeal from a judgment of the superior court for Clarke county, McMaster, J., entered January 11, 1913, upon findings in favor of the plaintiffs, after a trial on the merits before the court without a jury, in an action against a receiver to recover a special deposit. Affirmed.

*H. L. Parcel*, for appellant.

*McMaster, Hall & Drowley* and *Geo. H. Shepherd*, for respondents.

Gose, J.—This is a suit to recover of the receiver of the Commercial Bank of Vancouver, Washington, a sum of money which it is alleged was placed in that bank as a special deposit a few days before it closed its doors. The receiver has appealed from an adverse judgment. The uncontroverted facts are that Fred Olson, the original plaintiff, was administrator of the estate of Carl Peter Johnson, and the attorney in fact for Johanna Pauline Carlson and Nora Danielson, his heirs at law. As such attorney in fact, he had in his possession, on the 14th day of December, 1910, in money belonging to the heirs, the sum of $3,070.60. One of the heirs resided in Sweden and the other in the state of New York. Desiring to hold the money until the return of proper vouchers which he had forwarded to them, he placed the money in the Commercial Bank and received from it a receipt therefor, written at his instance and signed by the cashier, as follows:

"Vancouver, Wash., Dec. 14, 1910.     190

"Received from Fred Olson Three Thousand seventy & 60-100 Dollars, to be held until receipts are received from heirs. Then same to be forwarded by bank draft.
$3070.60.                              G. W. Daniels,
                                          Cashier."
"(Margin) The Commercial Bank, Vancouver, Wash."

The money was commingled with the general funds of the bank. The bank closed its doors five days after receiving the money. The examiner then took charge of its affairs until a receiver was appointed. A few days after its suspension, Mr. Olson received the vouchers, presented the receipt and demanded payment, which being refused, this action was commenced. As administrator of the Johnson estate he had done business with the same bank, presumably in the usual way. The cashier admitted that he knew that the money belonged to the Johnson heirs. Mr. Olson died pending the suit, and the heirs were substituted as plaintiffs. The case was tried to the court.

In addition to the facts stated, the court found that the money evidenced by the receipt was placed in the bank for safe keeping pending the receipt of the vouchers, when it was to have been forwarded to the heirs by bank drafts; that the bank commingled the money with its general funds, and that, prior to the commencement of the action, the receiver refused to comply with a demand for a return of the money. It was stipulated at the trial that, at the time of receiving the money in controversy and continuously thereafter until the bank closed its doors, it had on hand in cash not less than $13,000 which passed into possession of the receiver. These findings have abundant support in the record. Mr. Olson testified that he told the cashier that he desired to leave the money in the bank for safe keeping pending the return of the vouchers, when he would purchase drafts for remittance to the heirs. The cashier admitted that he drew and delivered the receipt at the request of Mr. Olson. He further said that he, at the same time, drew a certificate of deposit which remained in the bank and which was tendered to Olson after the examiner had taken charge of the affairs of the bank. Olson testified that nothing was said about a certificate of deposit at the time the money was placed in the bank, but that it was offered him in exchange for the receipt after the examiner had assumed control.

A deposit in a bank is either general or special. Where a general deposit is made, it is either credited to the account of a depositor subject to his check or evidenced by a demand or time certificate. The title to the deposit in such cases passes to the bank and it becomes the debtor of the depositor. On the other hand, when a bank accepts a special deposit, it becomes a trustee of the depositor and holds the money subject to the trust. The receipt itself affords strong, if not conclusive evidence, of a special deposit. It shows that the money was placed in the bank for a special purpose. Fortified by the evidence of the depositor and the admitted circumstances here present, it is obvious that both parties to the transaction intended to make a special and not a general deposit. It follows, therefore, that the bank holds the money, not as a general debtor, but in a fiduciary capacity. 5 Cyc. 514, 515; *Blake v. State Sav. Bank*, 12 Wash. 619, 41 Pac. 909; *Fogg v. Tyler* (Me.), 82 Atl. 1008, 39 L. R. A. (N. S.) 847; *Anderson v. Pacific Bank*, 112 Cal. 598, 44 Pac. 1063, 53 Am. St. 228, 32 L. R. A. 479; *Shopert v. Indiana Nat. Bank*, 41 Ind. App. 474, 83 N. E. 515; *Covey v. Cannon* (Ark.), 149 S. W. 514; *Peak v. Ellicott*, 30 Kan. 156, 1 Pac. 499, 46 Am. Rep. 90; *Myers v. Board of Education*, 51 Kan. 87, 32 Pac. 658, 37 Am. St. 263; *Dolph v. Cross*, 153 Iowa 289, 133 N. W. 669; *People v. City Bank of Rochester*, 96 N. Y. 33; *Massey v. Fisher*, 62 Fed. 958.

"A deposit is not special unless made so by the depositor, or unless made in a particular capacity. . . . In using deposits made for the purpose of having them applied to a particular purpose the bank acts as the agent of the depositor, and if it fail to apply it at all, or misapply it, it can be recovered as a trust deposit." 5 Cyc. 514, 515.

This view was recognized by this court in the *Blake* case, where it was said:

"If it had been delivered to the bank, not as a general deposit, but for a particular purpose, it would have been a trust fund in the first instance, and the title would not have passed

to the bank; but even then it could not have been recovered without showing that it had gone into the hands of the receiver."

In the *Anderson* case, money deposited in the bank as indemnity for its furnishing bail for the depositor was held to be a special deposit and recoverable as such, notwithstanding the fact that it was commingled with the general funds of the bank but without the knowledge of depositor.

In *Peak v. Ellicott*, the plaintiff delivered money to the cashier of the bank for the purpose of paying his note then held by a nonresident of the state. It was held that he could recover the money from one to whom the bank had made an assignment for the benefit of its creditors. The ruling was based upon the ground that the bank held the money in a fiduciary capacity and that the assignee had no authority to retain a trust fund belonging to the plaintiff. The *Myers* case is to the same effect.

In *Dolph v. Cross*, money was deposited in a bank for the purpose of meeting checks which the depositor had issued against the deposit, the depositor stating that fact to the officer or clerk who received the money. The bank placed the money to the credit of the depositor. The deposit was held to have been special for the benefit of the particular check holders; the court saying that the form of bookkeeping followed by the bank was not controlling. The appellant has cited *Bowman v. First Nat. Bank*, 9 Wash. 614, 38 Pac. 211, 43 Am. St. 870, and *Hallam v. Tillinghast*, 19 Wash. 20, 52 Pac. 329.

In the *Bowman* case, it was held that, where a customer sends a draft to a bank for collection and remittance and the bank collects the draft, places the money in its vaults and forwards its draft in payment, which the customer accepts and forwards to the drawee bank for payment, the relation of debtor and creditor is created. A like rule is announced in *Hallam v. Tillinghast*, where the bank made a collection for a local customer and placed the proceeds to his credit without

express direction. That these cases are inapposite is too obvious to require further comment.

The appellant suggests that the identical money was not traced into the hands of the receiver. That is true, but the old rule requiring an identification of the specific fund or its avails in the hands of a receiver has been relaxed in the later cases. The doctrine of the modern authorities, and what we consider the sounder view, is that the trust fund is recoverable where an equal amount in cash remained continuously in the bank until its suspension and passed to the receiver. *Fogg v. Tyler, Shopert v. Indiana, Covey v. Cannon,* and *Massey v. Fisher, supra; Peters v. Bain,* 133 U. S. 670; *Smith v. Mottley,* 150 Fed. 266; *Boone County Nat. Bank v. Latimer,* 67 Fed. 27; *In re Northrup,* 152 Fed. 763; *In re Stewart,* 178 Fed. 463.

In *Fogg v. Tyler,* it was held that, where a sum of money in excess of the amount of a special deposit was in the hands of the trustee bank when it became insolvent, the trust will be enforced notwithstanding the fact that the identical money cannot be identified. It was said that it suffices if it can be traced into the hands of the trustee, "either in its original or its altered state." The *Shopert* case voices a like rule. There the court also said that receivers take the property of the insolvent subject to all legal and equitable claims, and that when a fund consists of money, "identification does not require that the identical bills or coins be discovered, but the ascertainment of the fund into which it has entered and lodged is sufficient." *Covey v. Cannon* is to the same effect. In *Massey v. Fisher, supra,* it is said that,

"It is not important that the plaintiff's money bore no mark, and cannot be identified. It is sufficient to trace it into the bank's vaults, and find that a sum equal to it (and presumably representing it), continuously remained there until the receiver took it."

Some courts have slightly modified this doctrine by saying that the presumption is that money disbursed by a bank be-

tween the date of the deposit and the date of the insolvency was money which the bank might lawfully use (*Boone County Nat. Bank v. Latimer*, 67 Fed. 27; *National Bank v. Insurance Co.*, 104 U. S. 54), and as a correlary, that the presumption is that funds in the hands of the insolvent included all trust funds, or if less than the trust fund, that the residuum belonged to the latter fund. *Boone County Nat. Bank v. Latimer, supra.* This limitation is not important here because no evidence was offered to overthrow the legal presumption. Indeed, it would seem that the limitation is of little value, because if the trust fund has been commingled with the general funds of the bank the source of disbursement cannot be known, unless at some date following the special deposit all the funds of the bank had been abstracted or disbursed. The limitation is of little value for another reason, namely, the bank may lawfully disburse all moneys received as a general deposit, and the limitation could only operate between special depositors; and between them, the maxim that equality is equity would seem to control.

The decree is affirmed.

CROW, C. J., MOUNT, PARKER, and CHADWICK, JJ., concur.