In the Matter of MADELEINE DE SYLVIA HOLDEN, an Infant.

Surrogate's Court, Westchester County, April 6, 1933.

*Henry D. Holden*, petitioner in person.

*Lynch, Cahn & Weed*, for Hiram E. Meeker, receiver.

SLATER, S. This proceeding was instituted by the petition of Henry D. Holden as general guardian of Madeleine de Sylvia Holden, an infant, praying for an order directing Hiram A. Meeker, as receiver of the First National Bank in Mamaroneck, N. Y., to show cause why certain funds, of which the petitioner was appointed by decree of this court joint custodian with the clerk of the court, should not be surrendered and paid over.

It appears that, by an order dated January 27, 1932, the Surrogate's Court of Westchester county granted letters of guardianship of the person and property of the said infant to the father, Henry D. Holden, and further ordered and decreed that the clerk of the court be designated to collect and receive the moneys and property of the ward jointly with the said Henry D. Holden, " who is hereby directed to deposit in the name of such guardian all monies and property received as such guardian in the First National Bank *in* Mamaroneck, subject to the further order of the Surrogate."

Upon the return day, counsel appeared for the said receiver in response to the petition and order to show cause and objected to the jurisdiction of this court, the practice followed by the petition, denied the allegation of the petition and disputed the claim of the guardian, claiming that the deposit did not constitute court funds and asked that the motion be denied. The receiver further contended that the principle of debtor and creditor relationship existed.

For many years there had been in Mamaroneck the First National Bank and Trust Company *of* Mamaroneck. When the First National Bank and Trust Company *of* Mamaroneck got into financial difficulty, it ended its corporate existence. The First National Bank *in* Mamaroneck was then organized. The new bank took over the accounts payable and receivable of the old bank.

The First National Bank *in* Mamaroneck operated under the National Banking Law. It was created as such on January 15, 1932. The deposits in the instant case were made pursuant to my order, dated January 27, 1932. The Mamaroneck Trust Company, a State institution, liquidated its affairs about April, 1932, long after the issuance of the charter granted to the First National Bank *in* Mamaroneck and long after the date of our deposit in the said First National Bank *in* Mamaroneck. On January 16,

1933 the Comptroller of the Currency of the United States appointed Hiram D. Meeker as receiver to take possession of the First National Bank *in* Mamaroneck and its assets for the purpose of liquidation.

The charter of the First National Bank *in* Mamaroneck was newly issued to transact only commercial banking. The right to act in a trust capacity was not sought, nor granted by the authorities. (Federal Reserve Act, § 11, subd. k; U. S. Code, tit. 12, § 248, subd. k.) All powers of the former national bank had ceased. It was in liquidation by consent of its stockholders and the authorities. The new bank had no hangover rights or powers from the old national bank and trust company. The Mamaroneck Trust Company, the State institution, is not in the present picture because it continued as a separate institution long after the funds in controversy were placed in the First National Bank *in* Mamaroneck.

The question is here presented whether a debtor and creditor relationship exists between the bank and the guardian, or whether the deposit created a mere bailment.

It is the contention of the claimant that the receiver is unlawfully withholding property which belongs to the claimant and the claimant is in hostility to the liquidation proceedings.

The intention of the Federal statute is to throw into the hands of the Comptroller of the Currency the control of proceedings in winding up the affairs of a national bank which is insolvent, and a receiver appointed by him shall be subject to the direction of the Comptroller. The receiver of a national bank represents both the bank and the creditors and is simply a Federal officer or agent. Such a receiver stands in the place of the bank as to property belonging to a third person.

If the deposit is special, then the mere mingling of funds which are to be devoted to a special purpose with other funds of the depositor does not destroy the right of the guardian to claim such specific funds. If the bank did not acquire title to the funds in question, it could not acquire title thereto by commingling such funds with its general funds. The receiver, when he took over the bank for the purpose of liquidation, acquired no greater interest in the funds than the bank possessed. (*Matter of International M. Co.*, 259 N. Y. 77, 82.)

The requirement of equal distribution of the assets of the bank applies *only to the assets* which belong to the bank and not to moneys or property which, although in the possession of the bank at the time of its insolvency, belong to others.

The ordinary cases of deposits by executors, trustees, receivers

guardians, public administrators, and other fiduciaries which create the acknowledged state of debtor and creditor as declared by court decisions, are not comparable to the instant case. (*Matter of Egan*, 258 N. Y. 334; *Matter of Forrest*, 259 id. 553.) The fact that the deposit was made by *order of this court* creates it as a special deposit, if the bank had the legal right to receive it, and consequently distinguishes it from a general deposit into which two classes all deposits in commercial banks may be divided.

The court, in deciding *Matter of Egan* (*supra*) made the distinction when it wrote: " Such funds *were not deposited pursuant to an order of the court*. The situation is the same as though an individual administrator had deposited funds in the bank in his name as administrator *without an order of the court* requiring such deposit."

As this national bank was a bailee and not a debtor as to the funds in question, there can be no doubt as to the petitioner's right. If no procedure is prescribed for the reclamation of such property, in the event of the refusal of the liquidator to deliver it upon demand, then this court has the power to direct re-delivery by the receiver.

The particular fund in the instant case does not have to be traced. If, at the time the bank suspended business, it had on hand cash in excess of the amount of the guardian's funds which came into the hands of its receiver, that is alone sufficient. (*Merchants' Nat. Bank* v. *School District No. 8*, 94 Fed. 705; *Massey* v. *Fisher*, 62 id. 958; *Carlson* v. *Kies*, 75 Wash. 171, 176; 134 Pac. 808; 7 C. J. § 846, p. 848.)

A State court has jurisdiction to determine and segregate a trust fund *owned by others* in the hands of a receiver of an insolvent national bank and to deal with it, though it has no authority to direct the course of the Comptroller. (*Earle* v. *Pennsylvania*, [1900] 178 U. S. 449; *Earle* v. *Conway*, Id. 456; *Bank of Bethel* v. *Pahquioque Bank*, 14 Wall. 383, 401; Federal Banking Act, § 94; 12 U. S. Code Annotated, 241, and cases cited.)

As the bank did not cease to exist as a corporation upon its suspension and the appointment of a receiver, it is competent for this court to determine as between the parties what rights are acquired by one as against the other, and it becomes the duty of the receiver, the bank, to respond to the order of this court regarding this particular fund which it held as bailee.

This court has jurisdiction in the instant matter. The process here does not conflict with the laws of the United States and, if no such conflict exists, the laws of the State of New York and the laws of the United States may co-exist and be harmoniously enforced.

I have the support of two cases upon this subject-matter. *Matter*

*of McCarthy* (139 Misc. 147) had to do with a deposit of guardian's money in a State institution pursuant to the order of the surrogate of Kings county. The decision in that case was that the bank held only as bailee, and that the Superintendent of Banks in charge of the liquidating institution was bound to respond to the Surrogate's Court of Kings county.

The other case is in the United States District Court for the Eastern District of New York. It had to do with money on deposit in a State institution placed there by a receiver in bankruptcy operating under the direction of the Federal court. In that case the bank was not a duly designated depository of the court. This case is *Matter of Potell* (53 F. [2d] 877, Jan. 30, 1931, Dist. Ct., E. D., N. Y., opinion by Judge INCH). It is very enlightening on the questions presented here. District Judge BYERS, Eastern District of New York, in *Matter of Weiss* (17 Am. Bank. [N. S.] 647, upon similar facts, followed Judge INCH).

My decision to grant the motion is also founded upon the theory of an equitable charge upon the cash assets of the bank and it is the purpose here to present added reasons why the petitioner should recover on the basis of an equitable charge.

There is a distinct difference between the rights of the petitioner under the theory of an *equitable charge or lien* and his right growing out of a special deposit or constructive trust. When the deposit was made pursuant to an order of this court, neither the depositor nor this court intended to enter or continue a typical debtor and creditor relationship with the bank for it directed by order that the fund was to be held and paid out from its general funds in the manner designated by the order. (*Blakey* v. *Brinson*, 286 U. S. 254.)

When there is an equitable charge or lien, the claimant is still met with the legal fiction that the money must be traced, but on the theory of an equitable charge or lien, the property need only be traced into a larger fund or property. The doctrine of trust preferences and equitable liens or charges has often been confused, but it is true that if the claimant has established his right to an equitable lien or charge, the property need only be traced and becomes a charge upon the mass of the funds of the bank, and, as a result, the claimant has observed the rule for tracing. *Knatchbull* v. *Hallett* (L. R. 13 Ch. Div. 696, 727, 728) referred to the claimant's right as a charge on the mass. The ability to distinguish the particular fungible units of money which the claimant has contributed to the mass fund is overcome. The majority of courts have merely demanded that the subject-matter of the claim be traced into a specific fund — the mass of the fund — which fund

so augumented has come into the receiver's hands. Thus, our deposit is traced into the cash on hand at the time of liquidation. (*Fire & Water Comrs.* v. *Wilkinson,* 119 Mich. 655.)

Carried to its logical conclusion, the theory of equitable charge is that if the fund or mass of cash is depleted below the amount of the claim, the claim will be decreased *pro tanto.* (*Schuyler* v. *Littlefield,* 232 U. S. 707, 710; *Hewitt* v. *Hayes,* 205 Mass. 356; *Baker* v. *New York National Exchange Bank,* 100 N. Y. 31.)

In the recent case of *Shawmut Corp.* v. *Bobrick Sales Corp.* (260 N. Y. 499, January, 1933) the court proceeded to extreme lengths. The purchaser directed the bank to debit its account with the amount of the draft, which the bank did, at the same time crediting it with the amount of the draft in an account entitled "Prepaid Acceptances." The unanimous court held that the entry of the credit in the "Prepaid Acceptances" account amounted to a special appropriation to meet the acceptance, and as to it the bank was bailee or trustee. The theory of equitable lien or charge could have been applied, I presume, to the facts of that case.

In the instant case the fund was received pursuant to an order of this court with express and explicit directions and the bank, pursuant to such order, had to set it aside and had to engage to hold the money subject to the order of the court and as to it the bank did become a bailee or trustee. The bank was bound to hold the money subject to the order of the court and for no other purpose and later to return it to the claimant upon order of the court. As to it, the bank was never the owner. It assumed a duty and the receiver, as its representative, is bound by it. (*People* v. *City Bank of Rochester,* 96 N. Y. 32, 37.) If our deposit is a special deposit, it is given an equitable lien or charge on the general cash assets in the hands of the receiver.

And, it may be further said, and the court will hold, that upon the facts of the instant case, the claimant's funds are subject to the equitable charge or lien upon the mass money, the property of the bank so long as it contained cash equivalent in amount to the fund claimed.

Equity will be invoked to grant relief.

I hold that these funds were not a part of the bank assets to be "distributed" by the receiver, but must be returned in full to the rightful owner, pursuant to the order of the surrogate of Westchester county.

The motion is granted.