[No. 24728. Department One. March 21, 1934.]

STANLEY ZYDEK, *as Guardian of the Estates of John Zydek et al., Minors, Respondent,* v. THE FIRST BANK OF WILKESON *et al., Appellants.*[1]

*Bausman, Oldham, Cohen & Jarvis* and *Maurice H. Cooperman,* for appellant.

*John Burton Keener,* for respondent.

MILLARD, J.—This is an appeal from a judgment allowing, as a preferred claim against the insolvent First Bank of Wilkeson, the sum of $426.75. The court's findings of fact, which are amply sustained by the evidence, are summarized as follows:

On June 14, 1929, Stanley Zydek, the guardian of the estate of four minor children, entered into a written real estate contract with Harry Kepka, under the terms of which the guardian sold to Kepka certain real estate in Wilkeson belonging to the minors, for four hundred and fifty dollars. The purchase price was payable twenty dollars at the time of the execution of the contract and twenty dollars, or more, monthly

[1]Reported in 30 P. (2d) 654.

thereafter, with interest at six per cent per annum until payment in full of the principal and interest. At the request of the vendee, the payments were made at the First Bank of Wilkeson.

Zydek took the contract to the First Bank of Wilkeson, and left it there under an oral agreement with the bank for payment to the latter by the vendee of the monthly installments due under the terms of the real estate contract. Under the terms of the oral agreement, the bank was to deduct from the monthly payments the customary collection charges and keep or hold the balances until payment in full of the purchase price of four hundred and fifty dollars and interest. When the final payment was made to the bank, it was obligated under the oral agreement to turn over to Zydek all of the money collected, less its charges for collection services, for distribution by the guardian to his wards.

The bank received the monthly payments as made by Kepka, deducted its charges for services so rendered, and held all of the money thus received in trust for the guardian. In February, 1932, the minors having attained their majority, the guardian left with the bank a warranty deed from the heirs to Kepka, with instructions to deliver the deed to Kepka upon payment in full of the purchase price of the property.

"That all of said payments made by said Harry Kepka to said The First Bank of Wilkeson on said real estate contract from month to month under said trust agreement less charges deducted therefrom, increased or augmented the assets of said The First Bank of Wilkeson to the aggregate or amount of said payments during said time to the amount in said trust fund at the time said The First Bank of Wilkeson was taken over by C. S. Moody, Supervisor of Banking in the state of Washington, in the sum of $426.75. That during all of said time said plaintiff never received any

report or statement from said The First Bank of Wilkeson of the sums of money in its hands in said trust fund until after the taking over of said The First Bank of Wilkeson by the defendant, C. S. Moody, Supervisor of Banking. That prior to receiving said statement above mentioned, plaintiff had called at said The First Bank of Wilkeson after the taking over of said The First Bank of Wilkeson by said Supervisor of Banking and received the above mentioned real estate contract and warranty deed.

"That shortly thereafter, both orally and in writing, plaintiff was advised by defendants that defendants had funds in their hands belonging to plaintiff in the sum of $426.75. That later said plaintiff received notice to make and file proof of claim with the said Supervisor of Banking, C. S. Moody, as creditor of The First Bank of Wilkeson, an insolvent banking corporation. That in compliance with said notice plaintiff did file in writing a proof of claim in the sum of $426.75, the same being a preferred claim, with C. S. Moody, Supervisor of Banking, liquidating The First Bank of Wilkeson. That defendants allowed plaintiff's claim in the sum of $426.75 as a general claim, but denied plaintiff's preference rights."

While the ledger sheet of the bank shows the payments deposited to the credit of Stanley Zydek, guardian, the bank never required Zydek to give to it his signature. The bank did not supply Zydek with a pass book, check book, receipt for the contract, or anything disclosing the relationship between the bank and Zydek. The latter, during the time the money was in the custody of the bank, was not in a position to issue a check on or against the money collected by the bank under its oral agreement with Zydek. The only statement ever received by Zydek respecting the collections was that sent to him by the state supervisor of banking when he took charge of that insolvent institution.

The testimony of the bank's cashier (the cashier and Zydek were the only witnesses in the trial of the cause)

is corroborative of Zydek's testimony that the bank was to receive the monthly payments and hold same until the full purchase price was paid, at which time all of the sums collected would be turned over to the guardian for distribution to the heirs.

"A deposit in a bank is either general or special. Where a general deposit is made, it is either credited to the account of a depositor subject to his check or evidenced by a demand or time certificate. The title to the deposit in such cases passes to the bank and it becomes the debtor of the depositor. On the other hand, when a bank accepts a special deposit, it becomes a trustee of the depositor and holds the money subject to the trust." *Carlson v. Kies,* 75 Wash. 171, 134 Pac. 808, 47 L. R. A. (N. S.) 317.

It is clear that the guardian and the bank agreed that the payments would be received and held as a special, and not a general, deposit. The monthly installments were received by the bank for safe-keeping, the whole of the purchase price, when paid to the bank, to be delivered to the guardian for distribution to the heirs. It was not contemplated that the monthly deposits would be credited on general account. Under the bank's agreement to act as agent for the guardian to receive the installments due on the contract and to hold same until the whole amount due was collected, and then to deliver to the guardian, intact, all of the sums collected for distribution to the heirs, the fund was a special deposit. Having accepted the trust, the bank is bound thereby.

The judgment is affirmed.

BEALS, C. J., STEINERT, MAIN, and MITCHELL, JJ., concur.