[No. 34385. Department Two. March 27, 1958.]

H. JOEL WATKINS, *as Receiver, Appellant,* v. H. HAROLD
GORLICK *et al., Respondents.*[1]

[1]Reported in 323 P. (2d) 649.

*Charles S. Wheeler*, for appellant.

*Franco & Bensussen*, for respondents.

ROSELLINI, J.—This is an action to recover alleged preferences made during the four-month period immediately preceding the filing of an application for the appointment of a receiver. It is brought under the authority of Laws of 1941, chapter 103, § 3, p. 272 [*cf.* RCW 23.48.030] which provides:

"Any preference made or suffered within four (4) months before the date of application for the appointment of a receiver may be avoided and the property or its value recovered by the receiver. No preferences made or suffered prior to such four (4) months' period may be recovered, and all provisions of law or of the trust fund doctrine permitting recovery of any preference made beyond such four (4) months' period are hereby specifically superseded."

Preference is defined in Laws of 1941, chapter 103, § 1, p. 271 [*cf.* RCW 23.48.010 (3)] as follows:

" 'Preference' means a judgment procured or suffered against itself by an insolvent corporation or a transfer of any of the property of such corporation, the effect of the enforcement of which judgment or transfer at the time it was procured, suffered, or made, would be to enable any one of the creditors of such corporation to obtain a greater percentage of his debt than any other creditor of the same class."

RCW 23.48.040 authorizes payment in full of unsecured debts incurred by the corporation during the four-month period for the purchase of property which became assets of the corporation.

The respondent H. Harold Gorlick was a shareholder and officer of Northern Manufacturing Company (hereafter referred to as Northern), a corporation engaged in the manufacturing of hotwater heaters. He and the other respondent were partners in the distributing firm of Thrifty Supply Company, which purchased most of the heaters manufactured by Northern.

The complaint of the receiver alleged that, during the four months immediately preceding the filing of the application for his appointment, payments were made upon antecedent unsecured debts, the effect of the enforcement of which would be to enable the respondents to obtain a greater percentage of their debt than any other creditors of the same class. The alleged preferences were as follows:

"December 2, 1955 $2,645.96 for materials and supplies
November 14, 1955 343.36 claimed overpayment
November 14, 1955 514.04 claimed overpayment
December 16, 1955 622.75 for galvanizing
November 25, 1955 500.00 for galvanizing
December 2, 1955 342.68 for galvanizing"

The answer was a general denial, and no objections to the form and sufficiency of the complaint were raised. The matter was tried to the court, which granted the respondents' motion to dismiss at the close of the appellant's case. The reason given by the court was that the evidence was too "sketchy" and that the court would have "to guess and assume and imagine" in order to hold the respondents.

 A challenge to the sufficiency of the evidence admits the truth of the evidence of the party against whom the motion is made and all inferences reasonably to be drawn therefrom, and requires that the evidence be interpreted most strongly against the moving party and in the light most favorable to the opposing party. *Phillips v. Department of Labor & Industries*, 49 Wn. (2d) 195, 298 P. (2d) 1117, and cases cited.

The appellant maintains that, while he did not show that preferences were made in the exact amounts alleged, he did prove that the refunds were made, that the alleged transfer for materials and supplies was proved as a payment of an antecedent debt to the extent of at least $982.72, and that payment for galvanizing done prior to the cutoff date (November 13, 1955) was established in the amount of $359.60. This evidence, he contends, taken in conjunction with the respondents' admission that Northern was insolvent during all of the four-month period and that all of its

obligations to the respondent were satisfied, constituted a *prima facie* case sufficient to support a recovery in the absence of rebutting evidence.

The evidence offered by the appellant consisted of the testimony of the respondent H. Harold Gorlick and exhibits taken from the files of Northern.

It was shown that Northern had made the two alleged refunds for overpayments on the purchase price of heaters sold to the respondents a few days prior to November 13, 1955. These payments had been made through mistake, Northern having billed the respondents for the full value of the heaters, whereas it had been agreed that they would be partially paid for in the form of an offset against the amount owed by Northern for materials and supplies which had been furnished in October. The error was discovered within a few days after the payments were made, and the excess was promptly refunded. There was no evidence of bad faith in this transaction.

A person who has paid another an excessive amount of money because of an erroneous belief, induced by a mistake of fact, that the sum paid was due, is entitled to restitution, and the transferee holds the money upon a constructive trust. Restatement, Restitution, 92, § 20, and p. 661, § 163.

It is axiomatic that property held in trust is property of the *cestui que trust*; consequently, when such property is turned over to him, it is not a transfer of property of the trustee and not within the prohibition of the statute. Among the cases in which this court has recognized the right of a *cestui* to recover the full amount of the trust fund from an insolvent trustee are *American Express Co. v. Hansen*, 176 Wash. 187, 28 P. (2d) 788; *Zimmerli v. Northern Bank & Trust Co.*, 111 Wash. 624, 191 Pac. 788, 17 A. L. R. 192; *Rugger v. Hammond*, 95 Wash. 85, 163 Pac. 408; and *Carlson v. Kies*, 75 Wash. 171, 134 Pac. 808. The reason for this well-established principle is that, while creditors may justly claim all of an insolvent's property which is not exempt by law, they have no claim upon property which he

holds in trust for another. The trial court was therefore correct in holding that the refunds of $343.36 and $514.04 did not constitute preferential payments of antecedent debts.

The claimed payment for materials and supplies was actually a transfer of heaters of that value rather than cash, but the statute, by its terms, includes transfers of property of the insolvent. If it is impractical to recover the property itself, its value may be recovered.

The appellant's evidence revealed that during the month of October, 1955, the respondents furnished materials and supplies to Northern to be used in the manufacture of heaters which the respondents would subsequently purchase. The reason these items were purchased by the latter was that Northern, being then insolvent, was unable to obtain credit. The respondents exacted from Northern a handling charge for procuring these items. While it was understood that they were to be used in the manufacture of heaters for the respondents, they were actually commingled with the other materials of Northern; and those which were not used prior to the appointment of the receiver were listed among the assets of the corporation.

It was also understood between the two concerns, when the agreement for furnishing supplies was entered into, that Northern would be paid ten dollars per heater for its manufacturing services. After the first two billings, which were for the list prices of the heaters, less discounts, and which were adjusted by the refunds to which we have previously referred, the respondents were billed on the basis of ten dollars per heater as finished heaters were delivered. At the end of November, however, it had become apparent that Northern had furnished a good portion of the equipment used in the manufacture of the heaters from supplies other than those procured by the respondents, as shown by appellant's exhibit No. 1, p. 8 (a recapitulation of the parties' dealings during the month of November with respect to the furnishing of heaters by Northern), which revealed that the price of the heaters which had been furnished to the respondents during the month of November should have

been $4,966.80 (rather than the amount charged, $820), less a discount of ten per cent, and less the value of the material furnished by the respondents (including the handling charge), which was $2,645.91. The balance found to be owing, $1,004.21, was then paid by the respondents.

The theory of the appellant is that the materials and supplies furnished by the respondents in October, 1955, were sold to Northern, with the understanding that payment would be made in the form of a credit on the furnished heaters, and that this was, in fact, the way the agreement was carried out. Respondents maintain that the evidence does not show that a sale was intended. Contrary to this contention, however, the appellant's proof showed that Northern was charged a fee for the procurement of these items, that they were commingled with the other materials of like nature belonging to Northern, and that those which remained after the last heaters were delivered were regarded by the president, Gorlick, as assets of the insolvent corporation; that credit was allowed for all of the materials furnished, regardless of the fact that all of them had not been used. Furthermore, the president in his testimony more than once referred to the transaction as a sale. The logical inference to be drawn from these facts is that the parties understood that, when these materials were furnished to Northern, they became its property and Northern became indebted to the respondents for their purchase price.

This being the case, it must follow that, as the evidence now stands, the credits allowed respondents on the purchase price of heaters sold to them after November 13, 1955, constituted a preference, recoverable by the receiver for the benefit of all of the creditors of the respondents' class. The records of Northern show that finished heaters were transferred to the respondents after November 13, 1955, of the agreed value of $1,986.93, of which $380 had already been charged. If the cash which the respondents paid for heaters as a result of this accounting was all allocated to these later shipments, the respondents received a credit of $602.71 in payment for materials and supplies which they

had sold to Northern on credit, prior to November 13, 1955. (The appellant, in his brief, figured the amount to be $982.72, but he failed to take into account the $380 which previously had been charged.) Since the respondents were paid in full, the credit of at least $602.71 allowed for the purchase price of materials was necessarily the payment of a greater percentage of their debt than other creditors would be able to recover and thus constituted a preference.

It is impossible to determine from the records the full amount of credit properly allocable to the deliveries made prior to November 13th. Because of the incompleteness of the records and the reluctance of the witness on whom the appellant was forced to rely, it is perhaps impossible to establish the full amount of the preference, but this does not mean that the appellant should be denied recovery of that portion which he has been able to show.

The transaction differs materially from those involved in the two cases cited by the respondents in support of the trial court's order. In *Burrowes v. Nimocks*, 35 F. (2d) 152, it was held that an equitable pledge of notes to secure a deposit, made at a time when insolvency was not contemplated, was not an attempt to secure a preference. The depositor in that case was found to be a secured creditor. As the proof now stands in this case, there was no undertaking on the part of Northern to furnish security for the debt which it incurred when the material and supplies were furnished by the respondents.

*Mills v. Virginia-Carolina Lbr. Co.*, 164 Fed. 168, dealt with a sale of timber which took place within four months prior to bankruptcy and resulted in no depletion of the assets which were held at that time. The opinion does not reveal whether a preference statute similar to ours was involved, but, if it was, there was clearly no preference involved.

■ Contrary to the superior court's ruling, the evidence in regard to payments made after November 13th, for galvanizing done before that date was sufficient to support a recovery thereof. This work was done for Northern by Ken-

ning Equipment Company, but was charged to the respondents, who in turn collected from Northern. Invoices of Kenning dated prior to November 13, 1955, which were covered by payments from Northern to the respondents, subsequent to that date, totaled $359.60. It was indicated on the face of the invoices that delivery had been made to Northern. If this was the case, the later payment of $359.60 was made upon an antecedent debt. As we have said, the respondents' claims were paid in full, and in so far as their claims which arose prior to November 13th, were paid, the respondents were preferred over other unsecured creditors.

The appellant's evidence was sufficient to support findings that the credit given for materials furnished and the payment made for galvanizing done prior to November 13, 1955, were preferential transfers. Since the proof of these items was within the scope of his complaint, it was error to dismiss at the close of the appellant's evidence.

The judgment is therefore reversed, and the cause remanded for a new trial.

HILL, C. J., DONWORTH, WEAVER, and FOSTER, JJ., concur.