[No. 21895. Department Two. August 27, 1929.]

JOHN A. ROEBLINGS SONS COMPANY, *Plaintiff*, v. FREDERICKSON LOGGING & TIMBER COMPANY, *Defendant*, THE STATE OF WASHINGTON, *Appellant*, WESTERN COOPERAGE COMPANY, *Respondent*.[1]

*The Attorney General, Harry Ellsworth Foster, Assistant,* and *Chas. O. Flint,* for appellant.

*Chamberlain, Thomas, Kraemer & Powell,* for respondent.

[1]Reported in 280 Pac. 93.

FRENCH, J.—The Frederickson Logging & Timber Company, the defendant herein, was engaged in an extrahazardous occupation, and incurred certain indebtedness to the state of Washington for industrial insurance premiums during the year 1926 and a portion of the year 1927. In the latter part of the year 1926, the Western Cooperage Company, an Oregon corporation, respondent herein, loaned to the Frederickson Logging & Timber Company the sum of twenty thousand dollars, which loan was secured by a chattel mortgage upon all the engines, tracks, rails, tools and equipment of every character used by the logging company in its operations. Thereafter, in the latter part of the year 1927, the logging company becoming involved, a receiver was appointed. The only assets which the receiver took over were the tools, equipment, etc., covered by the chattel mortgage. The assets were thereafter sold by the receiver, and this dispute arises over the disposition of the money received therefor.

Prior to the receivership, the state of Washington filed three notices of lien upon the property for a portion of the amounts claimed due for industrial insurance premiums. Certain payments had been made thereon which seem to have been properly credited. The sole question in the case involves the construction of the provisions of § 3, chapter 136, Laws of 1923, p. 373, the same being Rem. 1927 Sup., § 7682, which reads as follows:

"If any employer shall default in any payment to the accident fund or the medical aid fund, the sum due shall be collected by action at law in the name of the state as plaintiff, and such right of action shall be in addition to any other right of action or remedy. If such default be after demand, there shall also be collected a penalty equal to twenty-five per centum of the amount of the defaulted payment or payments.

"The claim of the state for payments and penalties due herein shall be a lien prior to all other liens, except taxes, upon the real estate, plant, works, equipment and buildings improved, operated or constructed by any employer, and also upon any logs, spars, piles, ties, or other timber produced or articles manufactured by such employer which shall be owned by or in the possession of any person liable for such premiums. The lien hereby created shall attach from the date of the commencement of the labor upon such property for which such premiums are due. In order to avail itself of the lien hereby created, the department shall, within four months after such employer shall have made report of his pay-roll and shall have defaulted in the payment of his premiums thereupon, file with the county auditor of the county within which such property shall then be situated a statement in writing describing in general terms the property upon which a lien is claimed and stating the amount of the lien claimed by the department. If any employer shall fail, delay or refuse to make report of his pay-roll the lien hereby created shall continue in full force and effect although the amount thereof be undetermined and the four months time within which the department shall file its claim of lien shall not begin to run until the actual receipt by the department of such pay-roll report. From and after the filing of such claim of lien, the department shall be entitled to commence suit to cause such lien to be foreclosed in the manner provided by law for the foreclosure of other liens on real or personal property.

"All actions for the recovery of such payments shall be brought in the superior court and in all cases of probate, insolvency, assignment for the benefit of creditors, or bankruptcy, the claim of the state for payments due shall be a lien prior to all other claims, except taxes, and it shall be the duty of all administrators, receivers or assignees, for the benefit of creditors to notify the department of such administration, receivership or assignment within thirty (30) days from the date of their appointment and qualification. In any action or proceeding brought for the recovery of

payments due upon the pay-roll of an employer, .the certificate of the department that an audit has been made of the pay-roll of such employer pursuant to the direction of the department and of the amount of such pay-roll for the period stated in the certificate shall be *prima facie* evidence of such fact.''

Under the provisions of the above quoted statute, the trial court allowed the state priority as to all amounts due for which liens had been properly filed, and also for the amounts claimed for the four months' period prior to insolvency, and for which liens could have been properly filed, and held the chattel mortgage prior to that portion of the state's claim for which no lien was filed.

It is the contention of the state that the debtor having been declared insolvent, the receiver has jurisdiction over general assets, and it is not necessary that any lien notice be filed whatever, and that the state has a prior lien upon all the assets, whether they consist of operating property or not.

The case of *Barlow & Sons v. H. & B. Lumber Co.*, *ante* p. 565, 280 Pac. 88, is decisive of this case. The difference between them is that one involves labor claims and the other a chattel mortgage, but there is no difference in the law of priority so far as the state's claim for industrial insurance premiums or assessments is concerned.

By § 5, chapter 120, Laws of 1917, p. 487 (Rem. Comp. Stat., § 7682), the legislature provided that

''. . . in all cases of insolvency, assignment for the benefit of creditors, or bankruptcy, the claim of the state for payments due herein shall be a claim prior to all other claims, except taxes.''

In the case of *Whitney v. Page & Bolster Shingle Co.*, 116 Wash. 371, 199 Pac. 728, this court decided that, under this law, the state's claim for premiums

was superior to the liens of laborers. In the early case of *Sitton v. Dubois,* 14 Wash. 624, 45 Pac. 303, it was held that a labor lien on farm crops was superior to a prior existing chattel mortgage. That decision was not premised upon the theory that labor protected or preserved the property upon which the mortgage existed (although it may have been the reason the legislature passed the lien law), but rather upon the theory that, at the time the mortgage was given, the law giving a laborer a lien "prior to all other liens" was, in effect, incorporated into and made a part of such mortgage. If the theory in the *Sitton v. Dubois* case, *supra,* is sound, it must be applicable to the case at bar, because here we have, by statute, a lien which is even superior to all other liens except taxes, and this necessarily includes labor liens. The mortgage, then, in effect, contains, and is subject to, the provisions of the workmen's compensation act creating the claim for industrial insurance premiums a paramount lien. That the theory of the *Sitton v. Dubois* case, *supra,* is correct, is sustained by Clark on Receivers (2d ed.), p. 355, § 269, from which we quote as follows:

"Other exceptions to this rule are created by certain state statutes providing that in case of insolvency an appointment of a receiver and distribution of the insolvent's property to creditors, labor and other claims shall be paid prior to mortgage liens. These statutes must be read into the contract of lien or lien created by law. They are a part of such contract or lien and when such contracts or liens are created they must necessarily be subject to the statutes allowing prior claims in case of insolvency."

The Laws of 1917, p. 487, *supra,* creating the state's priority, has not been changed by more recent legislation, although the *Whitney v. Page & Bolster* case, *supra,* was decided in July, 1921, and although this same section of the statute has since been amended

in other particulars. We may well adopt the reasoning of this court in *Musgrave v. Atkinson,* 118 Wash. 323, 203 Pac. 973, wherein the court, after citing and following the case of *Sitton v. Dubois, supra,* said:

"When the legislature was considering and passing this amendment it knew that the farm laborer's lien statute expressly provided that such liens should be preferred and prior to everything, and it must also have known that this court, long before this amendment, had expressly held that, under the statute which was being amended, the laborer's lien was superior to a prior chattel mortgage. If, therefore, the legislature, when making the amendment, intended to make such radical changes in the law of the state as to make a laborer's lien junior to a prior mortgage it would seem that it would have expressly said so, and would not have left the matter in such uncertain language as is found in the statute."

Respondent relies upon a different portion of Rem. Comp. Stat., § 7682, as amended by § 3, ch. 136, Laws of 1923, p. 398, than that part relating to insolvency, but we are satisfied that the insolvency provisions apply. The property involved was that of the insolvent, even though it was impressed with a mortgage lien. That the receiver took over the same title which the insolvent had, is clear, for as stated in 34 Cyc., p. 191,

"A receiver can acquire no other, greater, or better interest than the debtor had in the property, and to this extent the receiver has been held to stand in the shoes of the debtor; . . ."

A study of the development by the legislative amendments of Rem. Comp. Stat., § 7682, which is the law relating to the collection of industrial insurance premiums, convinces us that each amendment was intended to make the collection of premiums more certain and complete. Notwithstanding our decision in

the *Whitney* case, *supra,* holding that, in insolvency proceedings, the state's claim was a superior lien, the legislature left practically unchanged that portion of the section relating to insolvency, but amended other portions by omitting that part which made invalid any sale, transfer, or lease of the "works, plant or lease, of a delinquent employer," but substituting the provision relating to the filing of a lien notice for the property "improved, operated or constructed" and the products or articles resulting from the extra-hazardous operations. It does not seem to have been the intention of the legislature to change the law relating to insolvency, but rather to cover a condition not before covered, namely, the giving to the state a right to claim a lien upon the property used in extrahazardous work, regardless of ownership. But such a right does not preclude the state from having a lien upon the property owned by an employer, which lien becomes fixed, not by the filing of a notice, but by the creation of a condition which, under the statute, of itself creates the lien and establishes its priority.

Reversed.

MAIN, PARKER, FULLERTON, and MILLARD, JJ., concur.