[No. 36230. En Banc. July 18, 1963.]

THE STATE OF WASHINGTON, *Appellant,* v. HI-LO FOODS, INC.
*et al., Respondents.*\*

\*Reported in 383 P. (2d) 910.

*The Attorney General, John W. Riley, Chief Assistant,* and *Henry W. Wager, Assistant,* for appellant.

*Lester Seinfeld,* for respondent.

*Croson, Johnson & Wheelon,* amicus curiae.

HALE, J.—The trial court held a tax lien priority statute to be discriminatory and, therefore, unconstitutional. The state appeals.

Hi-Lo Foods, Inc., a corporation operating a general grocery store in Tacoma, Washington, took steps to placate its creditors and avert insolvency proceedings by giving a mortgage for the security and benefit of its creditors. This mortgage, executed May 18, 1956, and delivered to the Tacoma Association of Credit Men, Inc., as mortgagee and trustee, was for the benefit of all of Hi-Lo's creditors otherwise unsecured as of that date.

By its terms, the mortgage intended to cover and encumber everything that the grocery company owned: shifting stock of merchandise, after-acquired property, fixtures, appliances and vehicles—in short, all personal property then owned or which Hi-Lo Foods might in the future acquire.

The mortgage instrument authorized Hi-Lo Foods to continue business under certain conditions, among which were:

(1) Power was vested in the mortgagee, Tacoma Association of Credit Men, to select the manager, auditor, bookkeeper, clerks or cashier at its option;

(2) In case of default in the mortgage payments, the association was empowered to supervise and control the business in any manner it deemed best to secure the claims of the creditors for whose benefit the mortgage was given;

(3) Power was vested in the mortgagee, Tacoma Association of Credit Men, to assume possession of the business and property in case of abandonment, default, insecurity or if the mortgagors permitted any taxes to become delinquent.

Thus it was that the debtor, Hi-Lo Foods, Inc., was permitted, by its creditors, to continue in the grocery business under what the parties have designated as a mortgage trust agreement. The Tacoma Association of Credit Men, as mortgagee, was permitted to apply any payments made by Hi-Lo Foods on the mortgage, first to the costs of setting up and administering the trust, including attorneys' fees, and thereafter to distribute the residue to the creditors for whose benefit the mortgage trust agreement had been set up.

Hi-Lo Foods continued in the grocery business at the same location under this mortgage of May 18, 1956. In the course of its business operations following that date, it incurred liabilities for unpaid business and occupation taxes and retail sales taxes for the period of September through December, 1958, in the amount of $6,526.11. Warrants for the collection of these taxes were issued by the State Tax Commission (RCW 82.32.210) and filed by the Sheriff of Pierce County with the Clerk of Court on January 12, 1959, and February 10, 1959. A warrant so filed constitutes a judgment against the tax debtor under RCW 82.32.220—the very section of the tax statutes in issue here.

Hi-Lo Foods continued to operate its grocery store under the mortgage trust arrangement until March 29, 1959, when, hopelessly insolvent, it closed its doors and tendered possession of its business premises and stock of merchandise to the mortgagee, Tacoma Association of Credit Men, Inc. The trial court found that the trust mortgage was in default with a balance due of $19,274.79.

A receiver was appointed to conserve the assets and wind up the affairs of the debtor company. All parties agreed that the value of the assets on liquidation would be

insufficient to pay off both the tax liens and the trust mortgage. Tacoma Association of Credit Men, as mortgagee and trustee for the otherwise unsecured creditors, Hi-Lo Foods as mortgagor concurring, claims priority of its claims over the tax liens under RCW 82.32.220, and the State of Washington claims priority of its tax liens under a proviso to the same section. The learned trial judge held the proviso to be discriminatory, a denial of due process of law and equal protection of the laws to the Tacoma Association of Credit Men, Inc., and a grant of special immunities and privileges to others than, but within the same class as, the association. Accordingly, it ruled the proviso to be unconstitutional, and adjudged the mortgage lien superior and prior to the lien of the state for excise taxes. From this judgment the state appeals.

RCW 82.32.210 empowers the State Tax Commission to issue warrants for the collection of unpaid taxes. Such warrants direct the sheriff to levy upon the real and personal property of the tax debtor. That the warrants, when pursuant to the statute are filed by the sheriff with the clerk of the superior court, shall constitute judgments, is clear from both the statute and our decision construing it, *Weitz v. Electrovation, Inc.,* 48 Wn. (2d) 604, 295 P. (2d) 728.

Pertinent parts of RCW 82.32.220 read:

"The sheriff shall file with the clerk of the superior court of his county a copy of the warrant, and thereupon the clerk shall enter [it] in . . . and thereupon the amount of such warrant so docketed shall become a specific lien upon all goods, wares, merchandise, fixtures, equipment, or other personal property used in the conduct of the business of the taxpayer against whom such warrant is issued, including property owned by third persons who have a beneficial interest, direct or indirect, in the operation of the business, and no sale or transfer of such personal property shall in any way affect such lien. The lien shall not be superior, however, to bona fide interests of third persons which had vested prior to the filing of the warrant when such third persons do not have a beneficial interest, direct or indirect, in the operation of the business, other than the securing of the payment of a debt

or the receiving of a regular rental on equipment: *Provided, however, That the phrase 'bona fide interests of third persons' shall not include any mortgage of real or personal property or any other credit transaction that results in the mortgagee or the holder of the security acting as trustee for unsecured creditors of the taxpayer mentioned in the warrant who executed such chattel or real property mortgage or the document evidencing such credit transaction.* The amount of such warrant so docketed shall thereupon also become a lien upon the title to and interest in all other real and personal property of the taxpayer against whom it is issued the same as a judgment in a civil case duly docketed in the office of such clerk . . ." (Italics ours.)

Deemed unconstitutional by the trial court, the italicized proviso was held invalid, which presents the only question in this appeal. The trial court declared the proviso invalid under Art. 1, § 12 of the Washington State Constitution:

"No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations."

and U. S. Const. Fourteenth Amendment, § 1, the pertinent part of which reads:

" . . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Our first approach takes us to the act itself which simply declares, by explicit language, that the state in its undoubted power to fix priority in liens, and representing, as it does, all of the people of the state, has permitted secured creditors having no interest in the operation of the business other than their own security, to come first and ahead of subsequently incurred tax liabilities. Then, in the exercise of this same power on behalf of all of the people of the state, it asserts that unsecured creditors who raise their security to a higher plateau on a going business, can-

not elevate their lien above that of the state for taxes either withheld from the state, or incurred in the subsequent operation of the business.

The proviso is designed to prevent the very thing here sought to be done by the unsecured creditors of Hi-Lo; its language could hardly be more appropriate to the occasion. Strike out the proviso, and the state's property, retail sales taxes collected by Hi-Lo, will be distributed to creditors secured under the trust mortgage. This in itself involves constitutional doctrines not yet injected into the case, and we do not bring them in by invitation.

■ Taking the direct lien priority approach, we avoid the problems of classification and simply assess the state's undoubted power to fix priority in liens as is done in other areas, and assume that this power quite logically can be said to extend to the state itself to declare its tax liens superior to all liens incurred in the operation or conduct of a business or occupation without regard to the element of time as was done in *Roeblings Sons Co. v. Frederickson Logging & Tbr. Co.*, 153 Wash. 580, 280 Pac. 93. Problems of constitutional limitations were studiously avoided in that case where premiums for industrial insurance incurred in the operation of a business were declared superior to chattel mortgages earlier made and established as liens. Constitutional provisions invoked in the instant case were neither asserted nor discussed in that decision, but the state's right to payment of industrial insurance premiums was adjudged superior and prior to the earlier executed chattel mortgages. Support for this decision is found in 51 Am. Jur., Taxation § 1016:

"It is doubtless competent for the legislature not only to make taxes a lien upon all the property of the owner of the property taxed, but to make such liens a first lien upon the property of the taxpayer, giving them priority over a mortgage or any other lien existing against the property, whether created before or after the assessment of the tax; in most jurisdictions statutes giving such priority to tax liens have been enacted. . . ."

See *Scandinavian American Bank v. King Cy.*, 92 Wash. 650, 159 Pac. 786; *Carstens & Earles v. Seattle*, 84 Wash. 88, 146 Pac. 381.

 That the parties to this action see in it a constitutional problem separate and apart from that of the state power to establish priority in liens, is clear from the findings of fact and conclusions of law entered by the learned trial judge, and this requires a second and different approach to the case, that of classification. Despite the broad conceptual aspects of constitutional limitations or powers in revenue matters, tax problems of this sort usually reduce to the ultimate matter of classification, for this is a tax problem. The proviso involved here is a part of a revenue act, and we hold that laws prescribing the mode and means of collecting taxes and their civil enforcement are integral to those sections which levy the tax and are governed by the same constitutional standards as are held to control the very taxing power itself.

 Aside from the war powers, nowhere is the power of government less inhibited than in its authority to tax. Where the legislature must create classifications to exercise the taxing power of the state, that one class may be favored over another does not make it necessarily discriminatory or arbitrary. The test is whether the legislature has selected reasonable grounds upon which to distinguish the favored class from the disfavored class. *State Board of Tax Com'rs of Indiana v. Jackson*, 283 U. S. 527, 75 L. Ed. 1248, 51 S. Ct. 540, 73 A.L.R. 1464. We have expressed this view many times before and since our decision in *Texas Co. v. Cohn*, 8 Wn. (2d) 360, 112 P. (2d) 522. If the need to classify is deemed inherent to a solution in this case as the parties to it presuppose, we see that the sorting process affects two classes of creditors: (1) Creditors having vested interests prior in time to the filing of the state liens (warrants) *and* having no direct or indirect interest in the operation of the business, and (2) unsecured creditors who have attained secured status through the merging of their claims in a mortgage contract that depends upon the con-

tinued operation of the business by the debtor in trust for the benefit of his unsecured creditors. We think that the line separating the two classes, though narrow, is sharply defined.

Consideration of both fairness and effectiveness in collecting the taxes levied by this statute motivated the state's policy in this proviso—the policy being that existing unsecured creditors shall not by virtue of their contracts with their debtor either defeat the state in the exercise of its taxing power on behalf of all its citizens or siphon off any part of such taxes received by the debtor in course of business into the debtor's assets to be made available for ultimate distribution to the unsecured creditors.

Considered in the light of the state's paramount power to levy and collect taxes on behalf of all of its people and the undoubted power to make classifications based upon narrow distinctions in the exercise of the taxing power, we think the act of classifying here was neither discriminatory nor unreasonable.

██ The proviso under attack here does not go to the point marked as the farthest distance one must go to reach the limits of legislative power short of transcending all reason. To uphold the proviso, we need not reach the far distant boundaries fixed by *Gruen v. State Tax Comm.*, 35 Wn. (2d) 1, 211 P. (2d) 651.

Nor would we depart from the reasoning of *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 25 P. (2d) 91, where we said:

" 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co. v. Kentucky*, 217 U. S. 563."

That distinctions in tax matters may be extremely narrow is acknowledged in *Magnano Co. v. Hamilton*, 292 U. S. 40, 78 L. Ed. 1109, 54 S. Ct. 599, where the appellant

attacked a statute of the State of Washington that levied a tax of 15 cents per pound on all butter substitutes sold within the state, no tax being imposed thereon if the butter substitute were sold for exportation to any other state, territory or country. Concededly, this was a very high tax per pound when viewed in the light of economic conditions prevailing in 1933. The tax endangered the very business of manufacturing and selling butter substitutes, and it was urged that it violated the Fourteenth Amendment as a tax designed not to raise revenue for the operation of government but to destroy a competitive or disfavored business.

In sustaining the tax, the supreme court said:

" . . . If the tax imposed had been five cents instead of fifteen cents per pound, no one, probably, would have thought of challenging its constitutionality or of suggesting that under the guise of imposing a tax another and different power had in fact been exercised. If a contrary conclusion were reached in the present case, it could rest upon nothing more than the single premise that the amount of the tax is so excessive that it will bring about the destruction of appellant's business, a premise which, standing alone, this court heretofore has uniformly rejected as furnishing no juridical ground for striking down a taxing act. . . ."

And, further:

"From the beginning of our government, the courts have sustained taxes although imposed with the collateral intent of effecting ulterior ends which, considered apart, were beyond the constitutional power of the lawmakers to realize by legislation directly addressed to their accomplishment. . . ."

Especially fine distinctions were upheld in a field other than taxation when an Oklahoma statute regulating the sale of eye glasses and frames was sustained in *Williamson v. Lee Optical of Oklahoma,* 348 U. S. 483, 99 L. Ed. 563, 75 S. Ct. 461.

Finally, we advert to a thoroughly documented decision of the supreme court, reversing a three-judge court of first instance, to sustain the constitutionality of the Alabama Unemployment Compensation Act. In *Carmichael v. South-*

*ern Coal & Coke Co.,* 301 U. S. 495, 81 L. Ed. 1245, 57 S. Ct. 868, 109 A.L.R. 1327, the Alabama statute required contributions from employers to support the unemployment trust fund of the United States. Excluded from this tax were numerous occupations such as agriculture, domestic service, railway employees covered by the Railway Labor Act, insurance agents and employees of religious, charitable and scientific organizations, and employers of less than eight persons.

Attacks were leveled at the act as an infringement of both the due process and equal protection clauses of the Fourteenth Amendment. The court held this to be a taxing measure, regardless of its designation as a payroll contribution and asserted it to be in exercise of the state's taxing power. Many of the very points raised by the instant appeal were covered. The court said (p. 509):

" . . . It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. Neither due process nor equal protection imposes upon a state any rigid rule of equality of taxation [citing cases]. This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation [citing cases].

" . . . A legislature is not bound to tax every member of a class or none. It may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it [citing cases]."

And, on the question as to whether the exclusion of employers of less than eight employees was discriminatory and unreasonable, it was said (p. 510):

" . . . Yet, this is the type of distinction which the law is often called upon to make. It is only a difference in numbers which marks the moment when day ends and night begins, when the disabilities of infancy terminate and the status of legal competency is assumed. . . .

"Administrative convenience and expense in the collection or measurement of the tax are alone a sufficient justification for the difference between the treatment of small

incomes or small taxpayers and that meted out to others.

" . . . Where the public interest is served one business may be left untaxed and another taxed, in order to promote the one . . .

" . . . Relatively great expense and inconvenience of collection may justify the exemption from taxation of domestic employers, farmers and family businesses, not likely to maintain adequate employment records . . ."

A clear, sharp line marks the difference in the case at bar between creditors having a prior recorded mortgage or lien upon a specific object and creditors having a general lien upon a shifting stock of goods, payment of which depends upon the continued operation of a business. Creditors who must look to the continued operation of a business, the carrying on of which requires the collection of tax moneys for the state and the incurring of further tax liability, occupy a status so markedly different from that of chattel mortgagees that the reasonableness of such classification is apparent.

The unsecured creditors, having elected to protect their interests by permitting their debtor to continue in business where tax liabilities would be incurred, entered a class covered by the proviso, where the state's liens for taxes come ahead of their own.

We hold that the proviso is a constitutional exercise of the state's taxing power. Accordingly, the judgment is reversed with instructions to grant the state's liens priority.

ALL CONCUR.

---

November 20, 1963. Petition for rehearing denied.