[No. 3435–II.   Division Two.   December 27, 1979.]

GENE M. PETERS, *Appellant,* v. LES N. SJOHOLM, ET AL, *Respondents.*

*Richard F. DeJean,* for appellant.

*Slade Gorton, Attorney General, Greg Montgomery, Assistant,* and *W. Gerald Lynch,* for respondents.

PETRIE, J.—Gene M. Peters appeals from a summary judgment dismissing his complaint which had contended that defendant Sjoholm, as an agent of the Department of Revenue of the State of Washington, and defendant Puget Sound National Bank violated his federal and state constitutional right to be free from unreasonable searches and seizures when the bank, in compliance with a notice and order to withhold and deliver issued by the department and served upon the bank, paid $89.98 from his account to the department. He also contends that the department has no authority to establish and to attempt collection of his tax liability without first having that determination made by the judiciary through a jury trial. We disagree with both contentions, and affirm the judgment of the trial court.

On October 6, 1975, the department audited Peters' business and discovered that his excise taxes (*i.e.,* use tax on inventory) were delinquent in the amount of $1,501.14. The department issued a tax assessment for the delinquency, and a copy was mailed to Peters. When he failed to remit the amount assessed, the department issued a tax warrant against him, commanding an agent of the department (1) to file a copy with an appropriate county clerk and (2) to levy upon personal property of the taxpayer. *See* RCW 82.32.210 and .230. Subsequent to the issuance of this warrant, Peters petitioned the department for a conference on the question of his tax liability. Notwithstanding the tardiness of the request, the department granted it, and, after a hearing, chose to abide by its original determination. Accordingly, the compliance division was directed to proceed with collection under the tax warrant.

Thereafter, the tax warrant was filed in Superior Court for Lewis County, creating a judgment of record and a lien upon Peters' property. *State v. Hi–Lo Foods, Inc.*, 62 Wn.2d 534, 383 P.2d 910 (1963); *Weitz v. Electrovation, Inc.*, 48 Wn.2d 604, 295 P.2d 728 (1956). Then, utilizing an alternative collection process under the authority of RCW 82.32.235,[1] the department, through defendant Sjoholm, one of its compliance agents, served a notice and order to withhold and deliver upon the bank. The notice indicates on its face both the tax warrant number and the Lewis County judgment number. The bank delivered to the department a check in the amount of $89.98, representing the funds in Peters' account. Peters then commenced this action.

First, Peters claims that the delivery of the funds in his bank account to the department, and the department's use of that statutory procedure, violated his rights under the fourth amendment to the United States Constitution,[2] and

---

[1]RCW 82.32.235 provides in part:

"In addition to the remedies provided in this chapter the department is hereby authorized to issue to any person, or to any political subdivision or department of the state, a notice and order to withhold and deliver property of any kind whatsoever when there is reason to believe that there is in the possession of such person, political subdivision or department, property which is or shall become due, owing, or belonging to any taxpayer against whom a warrant has been filed.

". . .

"In the event there is in the possession of any such person or political subdivision or department, any property which may be subject to the claim of the department, such property shall be delivered forthwith to the department of revenue or its duly authorized representative upon demand to be held in trust by the department for application on the indebtedness involved or for return, without interest, in accordance with final determination of liability or nonliability, or in the alternative, there shall be furnished a good and sufficient bond satisfactory to the department conditioned upon final determination of liability."

[2]The fourth amendment to the United States Constitution reads:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

article 1, section 7 of the Washington State Constitution.[3] He relies principally on a statement in *State v. McCray,* 15 Wn. App. 810, 551 P.2d 1376 (1976), in which the court agreed with the basic premise of *United States v. Miller,* 500 F.2d 751 (5th Cir. 1974), and *Burrows v. Superior Ct.,* 13 Cal. 3d 238, 529 P.2d 590, 118 Cal. Rptr. 166 (1975), that "[a] person's bank account *is* protected against unwarranted searches and seizures by our federal and state constitutions." *State v. McCray, supra* at 814.

In *Miller,* a government agent viewed microfilm copies of all the checks in Miller's account at a bank, and took copies of one deposit slip and one or two checks. The prosecution introduced several of these copies at trial to help prove three of the overt acts charged against Miller in furtherance of a conspiracy. The United States Court of Appeals held that obtaining these copies with a faulty subpoena constituted an unlawful invasion of Miller's privacy. In *Burrows,* the California court followed the reasoning of *Miller* in holding that any bank statements or copies thereof obtained without the benefit of legal process were acquired as the result of an illegal search and seizure.

However, the United States Supreme Court has reversed the Fifth Circuit's holding in *Miller. United States v. Miller,* 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619 (1976). In *Miller* at 442–43, the Supreme Court stated:

> Even if we direct our attention to the original checks and deposit slips, rather than to the microfilm copies actually viewed and obtained by means of the subpoena, we perceive no legitimate "expectation of privacy" in their contents. The checks are not confidential communications but negotiable instruments to be used in commercial transactions. All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of

---

[3]Article 1, section 7 of the Constitution of the State of Washington reads:
"No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

business. The lack of any legitimate expectation of privacy concerning the information kept in bank records was assumed by Congress in enacting the Bank Secrecy Act, the expressed purpose of which is to require records to be maintained because they "have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings." 12 U. S. C. § 1829b (a)(1). Cf. *Couch v. United States* [409 U.S. 322, 34 L. Ed. 2d 548, 93 S. Ct. 611 (1973)], *supra,* at 335.

The depositor takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government.

In view of the reasoning of the United States Supreme Court, the court's statement in *McCray,* that a person's bank account is protected against unwarranted searches and seizures, is of doubtful validity insofar as those protections are guaranteed by the federal constitution. Nevertheless, a state may impose a higher standard on searches and seizures than is required by the federal constitution, *State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978); however, the *McCray* court did not expressly state or imply that it was imposing a higher standard than was guaranteed by the fourth amendment to the United States Constitution. Neither do we impute any greater protection or significance to article 1, section 7 of the Washington State Constitution than we are obliged to provide under the fourth amendment to the United States Constitution.

■■ Peters also asserts, however, that this case can be distinguished from *Miller* because the case at bench involved the seizure of *funds* rather than a search and seizure of his checks, deposit slips, and bank statements. The assertion raises the question of whether a person has a reasonable expectation of privacy in the funds in his account. We are convinced that he does not.

In *Miller,* the United States Supreme Court found no reasonable expectation of privacy in the defendant's checks and deposit slips, even though it is very likely that they revealed much about Miller's activities, associations, and

beliefs. We know that they helped prove the conspiracy charge.

In the case at bench, the department received a check for $89.98 from the bank, representing the funds in Peters' account. This would merely reveal that he had such a sum in his account and nothing more. Furthermore, once money is deposited in a general account it actually becomes the property of the bank, and the bank and the depositor assume the legal relation of debtor and creditor. *Carlson v. Kies*, 75 Wash. 171, 134 P. 808 (1913); *Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank*, 10 Wn. App. 530, 518 P.2d 734 (1974). It would be inconsistent to say that Peters has a reasonable expectation of privacy in the *funds* in an account at a bank which is indebted to him for the amount of those funds, when he does not have a reasonable expectation of privacy in checks, deposit slips, and bank statements which are capable of disclosing much more about his private life. Therefore, we hold that neither the bank nor Sjoholm violated his federal or state constitutional rights of freedom from an unreasonable search and seizure.

Peters' remaining assignment of error raises the question of whether a judicial proceeding is a necessary prerequisite in order to determine tax liability. He concedes that the weight of authority is against his assertion that tax liability should be established only through the judicial system. However, he contends that the United States Constitution "should have provided" him with the right to a jury trial in this matter. We can provide precious little relief on the basis of that presentation unless the constitution does expressly or impliedly provide a right to jury trial before any tax liability may be imposed and enforced.

In *State ex rel. Mulhausen v. Superior Ct.*, 22 Wn.2d 811, 817–18, 157 P.2d 938, 160 A.L.R. 692 (1945) the court stated:

It is inherent in the exercise of sovereign power to require taxes to be paid under summary process. *Miller v. Henderson*, 50 Wash. 200, 96 Pac. 1052; *Scottish*

*Union & Nat. Ins. Co. v. Bowland,* 196 U.S. 611, 49 L. Ed. 619, 25 S. Ct. 345. The taxpayer has no vested right in any particular process: If, at some stage of the proceedings, he is given notice and has an opportunity to be heard, and if the procedure established by existing law is substantially followed in assessment and collection, the requirements of the due process clause of the constitution are satisfied. 1 Cooley on Taxation (4th ed.) 329, § 143; 3 Cooley on Taxation (4th ed.) 2263, 2264, §§ 1118, 1119; *Reese v. Thurston County,* 154 Wash. 617, 283 Pac. 170; *Miller v. Henderson, supra; Scottish Union & Nat. Ins. Co. v. Bowland, supra; Palmer v. McMahon,* 133 U.S. 660, 33 L. Ed. 772, 10 S. Ct. 324; *McMillen v. Anderson,* 95 U.S. 37, 24 L. Ed. 335.

In the present case, Peters was given notice of the tax assessed against him and he was granted a full administrative hearing on the question of his tax liability. Furthermore, the procedures established by RCW 82.32 were adhered to by the department in both assessing and collecting the taxes. Peters advances no reason that would compel this court to require a jury trial as a prerequisite to determination and enforcement of his tax liability. As he recognized, the overwhelming weight of authority is against such a requirement. *See Wickwire v. Reinecke,* 275 U.S. 101, 72 L. Ed. 184, 48 S. Ct. 43 (1927); *Olshausen v. Commissioner,* 273 F.2d 23 (9th Cir. 1959); *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941).

Judgment affirmed.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied January 23, 1980.

Review granted by Supreme Court May 7, 1980.