[No. 46865–6.   En Banc.   July 30, 1981.]

GENE PETERS, *Petitioner,* v. LES N. SJOHOLM,
ET AL, *Respondents.*

*Richard F. DeJean,* for petitioner.
*Slade Gorton, Attorney General,* and *Greg Montgomery,*

*Assistant,* for respondents.

UTTER, J.—The Department of Revenue seized petitioner's bank account as payment for delinquent taxes under RCW 82.32.210, .220 and .235. The trial court granted a summary judgment in favor of the State, its employee, and the defendant bank. We affirm.

Following an audit of petitioner Gene Peters' business, the Department found him delinquent in his excise taxes in the amount of $1,505.14. The Department issued a tax assessment for the delinquency and mailed a copy to petitioner. RCW 82.32.050. When Peters failed to satisfy the delinquency, the Department issued a tax warrant, under its official seal, against Peters commanding the sheriff of Lewis County to levy upon any of petitioner's property. RCW 82.32.210.

Peters petitioned the Department for review of its assessment decision. RCW 82.32.160. After a conference with Peters, the Department ruled its earlier decision was correct and ordered the compliance division of the Department to collect the tax warrants. These warrants had been filed in the Superior Court for Lewis County under RCW 82.32.220, and created a lien upon Peters' property. *State v. Hi–Lo Foods, Inc.,* 62 Wn.2d 534, 383 P.2d 910 (1963); *Weitz v. Electrovation, Inc.,* 48 Wn.2d 604, 295 P.2d 728 (1956).

In addition the Department, through its employee, respondent Les N. Sjoholm, served upon petitioner's bank, Puget Sound National Bank, a notice and order to withhold and deliver. RCW 82.32.235. Under this order, the bank was required to deliver to the Department any property belonging to Peters. The bank sent the Department a check for $89.98, which represented the funds in Peters' account.

Peters commenced this action against Sjoholm and Puget Sound National Bank on the grounds that the seizure of his bank account was an unwarranted search and seizure in contravention of both the state and federal constitutions; and that the seizure violated the fundamental requirements

of due process. The trial court granted defendants' motion for summary judgment, and the Court of Appeals affirmed.

Petitioner first contends that the seizure of funds from his bank account violated the fourth amendment to the United States Constitution and article 1, section 7 of the Washington State Constitution. We find it unnecessary to decide this issue.

The applicability of the Fourth Amendment to bank deposits is unclear. In *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 50 L. Ed. 2d 530, 97 S. Ct. 619 (1977), the Internal Revenue Service (IRS) seized a taxpayer's bank account. The district court held it was constitutional, but the Supreme Court did not address that aspect of the case. The court, however, did state that the full panoply of Fourth Amendment protections applies to IRS seizures which intrude upon a taxpayer's privacy. As for all other IRS seizures, the court implied that there must only be probable cause that the seized items belong to the taxpayer.

The subsequent case law is divided as to whether that means the Fourth Amendment applies only to seizures made on the taxpayer's private premises, *see Brunwasser v. Jacob,* 453 F. Supp. 567 (W.D. Pa. 1978), or whether it applies generally to all IRS seizures regardless of where made. *See United States v. One 1975 Pontiac Lemans,* 621 F.2d 444 (1st Cir. 1980). The disagreement stems from the court's abbreviated treatment, and approval, of the IRS seizure of vehicles in public places. The court stated that if there is probable cause to believe that such a vehicle belongs to the taxpayer, the IRS may seize it without a warrant. Because the court did not require the existence of any exigent circumstances (which the Fourth Amendment has been read to require in other contexts involving the seizure of parked cars), some courts have said the Fourth Amendment must not apply to seizures unless conducted on the taxpayer's private premises. *See Jacob* and *One 1975 Pontiac Lemans.*

Such a conclusion is buttressed by *Den ex dem. Murray v. Hoboken Land & Improvement Co.,* 59 U.S. (18 How.)

272, 15 L. Ed. 372 (1856), the case relied upon extensively by *G.M. Leasing. Murray* stated that the Fourth Amendment does not apply to civil proceedings for the recovery of debts. If that is the law, the probable cause requirement for all seizures may be explainable as mandated by due process, rather than the Fourth Amendment. *G.M. Leasing,* at 252.

There are several possible justifications why the Fourth Amendment should apply only to seizures involving the taxpayer's private premises, and not seizures of bank deposits. One is that once the tax assessment and subsequent levy activity begin, the government in effect becomes a co–owner in the property to be seized. *See United States v. Bluhm,* 414 F.2d 1240 (7th Cir. 1969), and cases cited therein. At that point, the government is presumptively entitled to it. *One 1975 Pontiac Lemans,* at 450. Thus, the taxpayer's expectation of privacy in that property is reduced once she/he becomes aware that it is subject to levy. Such is, in part, the analysis used in *State v. McCray,* 15 Wn. App. 810, 551 P.2d 1376 (1976). The court condoned a call by the police to a bank for the purpose of ascertaining the status of an account in which a bad check had been drawn, because

> It seems clear to us that a person who writes or passes a bad check drawn on his or her bank account cannot have any justifiable expectation that the status of the account at that time will remain private.

*State v. McCray, supra* at 816. That same analysis could be applied to this case.

A possible second justification is that the government's strong interest in collecting its taxes overrides the taxpayer's interest in the seized property. *G.M. Leasing,* at 352; *One 1975 Pontiac Lemans,* at 450. The government may intrude upon a person's privacy when its interest is stronger than the individual's right of privacy. *See State v. Lesnick,* 84 Wn.2d 940, 942, 530 P.2d 243 (1975). In the case of tax seizures, the government has a strong interest in preventing the property from being removed before it can

be seized. This could be a problem if the government had to fully comply with the Fourth Amendment requirements.

On the other hand, the individual's interest in the property can be adequately protected by a postseizure hearing, which is required by statute or due process. *See Ingraham v. Wright,* 430 U.S. 651, 696, 51 L. Ed. 2d 711, 97 S. Ct. 1401 (1977) (interpreting *G.M. Leasing*). In the individual's case, any injury to the taxpayer as a result of an improper seizure can be remedied after the fact. Moreover, the taxpayer has only a minimal expectation of privacy in his or her bank deposits. Once money is deposited in a general bank account, title to the money passes to the bank, and the bank and the depositor assume the relationship of debtor and creditor, respectively. *Carlson v. Kies,* 75 Wash. 171, 134 P. 808 (1931); *Allied Sheet Metal Fabricators, Inc. v. Peoples Nat'l Bank,* 10 Wn. App. 530, 518 P.2d 734 (1974). It thus has been stated that since the depositor exerts neither an ownership nor a possessory interest in the funds, he or she has no legitimate expectation of privacy in the funds themselves and no interest protected by the Fourth Amendment. *See United States v. Miller,* 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619 (1976);[1] *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). Similarly, although the depositor does have an ownership interest in the indebtedness created by the deposit, such an interest may not create, in light of society's strong interest in tax collection, an expectation of privacy which society is prepared to recognize as legitimate for Fourth Amendment purposes. *Katz,* at 361–62. *See also Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978).

In contrast, some courts, without any analytical elaboration, believe the Fourth Amendment does apply to seizures of the taxpayer's funds; at least to the extent of requiring

---

[1] In *Miller,* the United States Supreme Court held that bank records, including checks, deposit slips and bank statements, do not come within the protection of the Fourth Amendment. This decision, however, is not dispositive of the case at bench.

the presence of probable cause. *Flores v. United States,* 551 F.2d 1169 (9th Cir. 1977); *Brunwasser v. Jacob, supra.* In *Flores,* the court disapproved of an IRS seizure of money from a bail bondsman, because the IRS lacked probable cause to believe it belonged to the delinquent taxpayer. In *Jacob,* the IRS was allowed to levy on property held by a bank.

The argument for applying the Fourth Amendment to seizures of bank accounts is that such a seizure extinguishes the bank's obligation to pay that sum to the taxpayer. "[P]ayment to the Government pursuant to levy and notice is a complete defense" to any subsequent claim by the taxpayer. *DiEdwardo v. First Nat'l Bank of Bath,* 442 F. Supp. 499, 500 (E.D. Pa. 1977). To this extent, the taxpayer has a form of ownership interest in the debt owed him/her by the bank. Ownership interests are generally sufficient to invoke the Fourth Amendment's prohibition against unreasonable searches. An individual "who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude." *Rakas v. Illinois, supra* at 144 n.12.

We however need not decide whether the Fourth Amendment, or its counterpart in our state constitution, applies to seizures of bank deposits. The cases agree as to what procedure must be followed for a seizure of a bank account to be valid, although they may disagree as to which constitutional provision requires it. The agency must have probable cause to believe that the bank fund belongs to the taxpayer. *See, e.g., Flores v. United States, supra* at 1174–75. It, however, does not need an ordinary search and seizure warrant. *See Flores v. United States, supra; Brunwasser v. Jacob, supra.* The probable cause requirement exists, regardless of whether the Fourth Amendment applies, because of due process. *See G.M. Leasing Corp. v. United States, supra.* The tax agency, therefore, may seize bank funds when it complies with the relevant statutes and has probable cause to believe the bank funds belong to the taxpayer.

To ensure the speedy and effectual collection of taxes, the government may, under its inherent sovereign power, assess and collect taxes in a summary fashion. *G.M. Leasing Corp. v. United States, supra; Phillips v. Commissioner,* 283 U.S. 589, 596–97, 75 L. Ed. 1289, 51 S. Ct. 608 (1931); *State ex rel. Mulhausen v. Superior Court,* 22 Wn.2d 811, 817, 157 P.2d 938, 160 A.L.R. 692 (1945). This summary method of collection does not violate the requirement of due process if, at some point during the proceedings, the taxpayer "is given notice and has an opportunity to be heard, and if the procedure established by existing law is substantially followed in assessment and collection". *State ex rel. Mulhausen, supra* at 817. *See also G.M. Leasing; Fuentes v. Shevin,* 407 U.S. 67, 90–92, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972).

In the case at bench, the Department utilized a summary method of collection in response to Peters' tax delinquency. Due process was satisfied, however, in that it followed the procedures established under RCW 82.32, and gave Peters notice of the tax assessed against him, and afforded Peters an administrative hearing on the matter of his tax liability.

Moreover, petitioner had the opportunity to challenge the tax assessment after the taxes had been paid. He could have applied for a refund and for a conference to examine and review the tax liability, RCW 82.32.170, or appealed to the Superior Court for Thurston County for a refund, RCW 82.32.180. In the area of tax collection, it is constitutionally sound to postpone the opportunity for a hearing until after the payment of the delinquent taxes. *See Fuentes v. Shevin, supra* at 91–92.

Lastly, petitioner claims that he is entitled to a jury trial prior to the imposition and enforcement of any tax liability. There is no such right to a trial by jury. *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 116 P.2d 507 (1941).

We affirm the trial court's decision granting respondents'

motion for summary judgment.

STAFFORD, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

BRACHTENBACH, J. (concurring)—While I agree with the result of the majority, my analysis differs. I conclude that the government's levying of private bank accounts constitutes a "search and seizure" for the purposes of the fourth amendment of the United States Constitution and a "disturbance" or "intrusion" in Const. art. 1, § 7 terms.[2] These constitutional provisions were not violated, however, because the government actions were reasonable under the circumstances of this case. Petitioner also was accorded all rights owed him under the due process clause.

As a preliminary matter, note the context in which the challenged conduct occurred. Funds from Peters' personal checking account were transferred to the Department of Revenue as required by a notice to withhold and deliver to satisfy a delinquent tax assessment. RCW 82.32.235. The government's taking of the money was not to gather evidence, remove instrumentalities or return fruits of a crime. Nor was the subject tax warrant issued by a neutral magistrate, but by the Department of Revenue. RCW 82.32.210. In addition, the petitioner does not seek the exclusionary remedy. Because these circumstances are atypical, the standard search and seizure tests should be applied discriminately, in light of the values underlying the governing principles.

I

The history, purpose and applications of the Fourth Amendment require its application to government levies under RCW 82.32.235.

Among the provisions of the Bill of Rights, the Fourth Amendment's history is richest and most revealing of its

---

[2]Although these provisions "vary slightly in language, [they] are identical in purpose and substance", *State v. Miles,* 29 Wn.2d 921, 926, 190 P.2d 740 (1948); *State v. Smith,* 88 Wn.2d 127, 559 P.2d 970 (1977), and will be discussed as one in this opinion.

intended effect. J. Landynski, *Search and Seizure and the Supreme Court* 19 (1966). The abuses of tax collectors and customs officers in England and colonial America were of central concern to the framers of our federal constitution. Their intrusions under the power of general warrants and writs of assistance were particularly despised. T. Taylor, *Two Studies in Constitutional Interpretation* 41 (1969). The writs in this country were used to search for and seize goods smuggled to evade the revenue laws. Taylor, at 35. Like the RCW 82.32.210 tax warrant in the present case, they were: (1) issued by executive, not judicial, authority, (2) indefinite as to the time or place of seizure, and (3) silent as to which assets were subject to attachment.

The amendment received little judicial attention before the landmark decision in *Boyd v. United States*, 116 U.S. 616, 29 L. Ed. 746, 6 S. Ct. 524 (1886). The issue before that court was whether the government could require production of documents by defendants in a forfeiture proceeding. While declaring that the Fourth Amendment scrutinizes such nonliteral "seizures", the underlying principles of the protection were announced:

> It is not the breaking of [a person's] doors, and the rummaging of his drawers, that constitutes the essence of the offence; but it is the invasion of his indefeasible right of personal security, personal liberty and private property, where that right has never been forfeited by his conviction of some public offence, . . .

*Boyd,* at 630; *United States v. Chadwick*, 433 U.S. 1, 11 n.6, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977).

In *Katz v. United States*, 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967) the court again went beyond the conceptual traditions of Fourth Amendment law in extending coverage to prevent warrantless eavesdropping on conversations in a public phone booth. Because "the Fourth Amendment protects people, not places", the court reasoned that it therefore protects "what [an individual] seeks to preserve as private, even in an area accessible to the public". *Katz,* at 351. Because the *Katz* rule has been mod-

ified somewhat to emphasize "legitimate expectations" arising from interests in property, *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978), the underlying concept more clearly applies.

For example, the Supreme Court has extended the amendment's coverage to possessions which are stored for safety and security outside of an individual's premises. In *United States v. Chadwick, supra,* federal authorities removed and subsequently opened a locked footlocker from the scene of a drug arrest at a public train station. The court ruled that the owner's Fourth Amendment privacy interests were implicated.

> By placing personal effects inside a double–locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause.

*United States v. Chadwick, supra* at 11.

Similarly, citizens manifest an important expectation of privacy by depositing their money in the local bank. Because they alone can control the disposition of their funds, people rely on this security, just as they would if the cash were stashed in their own mattresses. By moving money to the bank for the purpose of security, it cannot be said that "[t]he right of the people to be secure in their persons, houses, papers, and effects, . . ." (U.S. Const. amend. 4) and the protection of privacy due therefrom, evaporates.

*Katz* exemplified what is at times the functional specific protection of the amendment. *Katz* was protected against unreasonable "seizure" of his voice through eavesdropping, but was unprotected against visual observance through the glass walls of the booth. *Katz,* at 352. So too should bank depositors be secure that their money will not be removed unreasonably, that they will maintain exclusive control over its disposition, while the information regarding its presence

and value can be disseminated by the bank without implicating the amendment. *United States v. Miller,* 425 U.S. 435, 48 L. Ed. 2d 71, 96 S. Ct. 1619 (1976).

In *United States v. Miller, supra,* the court ruled that bank depositors have no legitimate expectation of privacy in copies of their checks, deposit slips and bank statements. Therefore, there was no Fourth Amendment search and seizure when the bank revealed this information to federal authorities. The decision was based on: (1) the absence of an ownership or possessory interest in the items seized, (2) the public character of the information, after being passed through commercial channels, and (3) the voluntary nature of the disclosure of this information. *Miller* is distinguishable from this case. Its much criticized rationale should not be extended to erode protections against government removal of private funds in bank accounts. *See Miller,* at 447–56 (Brennan, J., and Marshall, J., dissenting); 1 W. LaFave, *Search and Seizure* 411 (1978); Hufstedler, *Invisible Searches for Intangible Things: Regulation of Governmental Information Gathering,* 127 U. Pa. L. Rev. 1483 (1979); Comment, *A Bank Customer Has No Reasonable Expectation of Privacy of Bank Records: U.S. v. Miller,* 14 San Diego L. Rev. 414 (1977); Comment, *Government Access to Bank Records in the Aftermath of United States v. Miller and the Tax Reform Act of 1976,* 14 Hous. L. Rev. 636 (1977).

Money in a bank account might be an individual's most important possession. In exchange for it all goods and services necessary to live are commonly procured. Technical characterization of the funds as a "debt" for purposes of banking law should not affect the constitutional protection one is given as the majority and *Miller* suggest. *Katz* specifically rejected traditional rules regarding ownership as boundaries of Fourth Amendment scrutiny. *Katz,* at 352–53. *Cf. Rakas v. Illinois, supra* at 142 (tort and property law characterizations rejected as a boundary for Fourth Amendment rights). In any event, depositors have a significant property interest as a demand creditor, *Aberdeen v.*

*National Sur. Co.,* 151 Wash. 55, 275 P. 62, 65 A.L.R. 794 (1929), and the Fourth Amendment clearly protects more than tangible property. *Warden v. Hayden,* 387 U.S. 294, 304, 18 L. Ed. 2d 782, 87 S. Ct. 1642 (1967), *Wong Sun v. United States,* 371 U.S. 471, 484–86, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963). Most importantly, the characterization is irrelevant because it is reasonable to expect that this property, which is so intimately tied with one's identity and welfare, will be under one's exclusive control. This power to exclude others can give rise to a "legitimate expectation of privacy" which warrants protection. *Rakas v. Illinois, supra* at 144 n.12.

The funds were not made public thereby destroying its private nature as were the checks and bank records in *Miller.* While the bank is a public reporting vehicle of deposit information, *Miller,* at 442–43, it performs no such function of appropriating funds.

People often have little choice but to place their money in a bank. The California State Supreme Court has stated:

> For all practical purposes, the disclosure by individuals or business firms of their financial affairs to a bank is not entirely volitional, since it is impossible to participate in the economic life of contemporary society without maintaining a bank account. . . . To permit a police officer access . . . merely upon his request, without any judicial control as to relevancy or other traditional requirements of legal process . . . opens the door to a vast and unlimited range of very real abuses of police power.

*Burrows v. Superior Court,* 13 Cal. 3d 238, 247, 529 P.2d 590, 118 Cal. Rptr. 166 (1974); *See* Comment, *Government Access to Bank Records,* 83 Yale L.J. 1439 (1974). That court confronted the same issue posed in *Miller,* but unanimously ruled that individuals do have a protected privacy interest in their bank account records. Division One of our Court of Appeals agrees. *State v. McCray,* 15 Wn. App. 810, 551 P.2d 1376 (1976) (decided before *Miller*).

The majority suggests that once a tax assessment and levy are made, the government becomes a co–owner of the property, thereby extinguishing the depositor's legitimate

expectations of privacy. Because the RCW 82.32.210 levy power is created before any piece of property is identified, does that mean that a delinquent taxpayer cannot expect privacy in any of his/her assets? Does the government become co–owner of everything he/she owns? *McCray* held that one who knowingly passed bad checks should legitimately expect less privacy in that checking account. Here the account had no relation to the basis for the government's claim against the taxpayer.

Even if one's "expectations of privacy" were somewhat diminished, it would be misleading to focus too narrowly on this phrase. *Katz* specified that the Fourth Amendment protects more than just one's "right to privacy". *Katz,* at 350. Neither are expectations always an accurate gauge of Fourth Amendment protections. For example, in a high crime area citizens may have no reasonable expectation that their new cars parked on the street will remain unmolested. Should the Fourth Amendment offer any less protection against the police breaking into those cars because their owners expected no better? Do Fourth Amendment protections diminish as perceptions of revenue agent intrusion and abuses become widespread? The central question becomes one of values.

> It is whether, if [seizure of taxpayer's bank funds by revenue agents before a judicial determination of liability] is permitted to go unregulated by constitutional restraints, the amount of privacy and freedom remaining to citizens would be diminished to a compass inconsistent with the aims of a free and open society.

Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L. Rev. 349, 403 (1974).

Many persons' social security, pension, and welfare checks are mailed to and deposited in their bank accounts on a regular basis. Their survival would be jeopardized if those funds were unreasonably seized. Because of the centrality of the bank account in our lives, it is entirely consistent with Fourth Amendment traditions and values to hold that unreasonable government searches and seizures

thereof are forbidden.

## II

Once it is determined that the Fourth Amendment applies "[o]ur fundamental inquiry . . . is whether or not a search or seizure is reasonable under all the circumstances. *Cooper v. California,* 386 U. S. 58 (1967)", *United States v. Chadwick, supra* at 9. *Delaware v. Prouse,* 440 U.S. 648, 653–54, 59 L. Ed. 2d 660, 99 S. Ct. 1391 (1979); *State v. Henneke,* 78 Wn.2d 147, 470 P.2d 176 (1970). In most cases a warrant is required to insure that a search and seizure is reasonable. *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 352–53, 50 L. Ed. 2d 530, 97 S. Ct. 619 (1977).

In this case there were two stages at which a neutral magistrate might have scrutinized the Department of Revenue's actions if a warrant were required. First, a magistrate could have demanded that tax authorities show that the taxes assessed to Peters were legitimately owed. Second, a magistrate could have required a showing of probable cause that Peters' assets were in the bank to which the notice and order to withhold and deliver was directed.

The determination of the existence of a tax liability is the most crucial stage for the taxpayer. In this case Peters was notified of the deficiency, RCW 82.32.050, and given an administrative conference to review the assessment decision. RCW 82.32.160. Peters also had the opportunity to seek review of the administrative determination in court, although after payment of his tax. RCW 82.32.180. By interposing a magistrate into the tax assessment and collection procedure before the seizure the taxpayer would gain little additional protection. Where the government tax assessment gains the force of a judgment by filing the tax warrant with the clerk of court, RCW 82.32.220, a magistrate would have no basis upon which to reject a warrant application. *United States v. One 1975 Pontiac Lemans,* 621 F.2d 444, 453 (1st Cir. 1980). To require a judicially authorized warrant in such cases, therefore, would serve no useful function.

A warrant might require a showing that the assets claimed by the government are in a particular bank. The summary collection statute already requires the Department to have "reason to believe that there is in the possession of such person" assets owed the taxpayer. RCW 82.32.235. Requiring a detached magistrate to insure that such belief exists would not affect this taxpayer's Fourth Amendment interests. If no probable cause exists and no assets are present, Peters' privacy is undisturbed. If by chance his assets are in the bank to which notice is given, the taxpayer is no worse off.[3] Requiring a judicial warrant at this stage, under these facts, would create a worthless administrative burden. As the Supreme Court has said in the context of

> noncriminal inventory searches, where probable cause to search is irrelevant, . . . ". . . search warrants are not required, linked as the warrant requirement textually is to the probable–cause concept." *South Dakota v. Opperman,* 428 U. S. 364, 370 n. 5 (1976). This is so because the salutary functions of a warrant simply have no application in that context; the constitutional reasonableness . . . must be determined on other bases.

*United States v. Chadwick,* 443 U.S. 1, 10 n.5, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977).

The standard for judging the reasonableness of a warrantless search and seizure is to balance "the need to search [or seize] against the invasion which the search [or seizure] entails." *Camara v. Municipal Court,* 387 U.S. 523, 537, 18 L. Ed. 2d 930, 87 S. Ct. 1727 (1967). *See United States v. Ramsey,* 431 U.S. 606, 616–19, 52 L. Ed. 2d 617, 97 S. Ct. 1972 (1977).

The government has a strong interest in the efficient collection of taxes which has long been recognized by the judiciary. *Phillips v. Commissioner,* 283 U.S. 589, 596–97, 75 L. Ed. 1289, 51 S. Ct. 608 (1931); *G.M. Leasing Corp. v. United States, supra; State ex rel. Mulhausen v. Superior*

---

[3]Whether or not the Fourth Amendment rights of the bank or other parties might be compromised is a separate issue.

*Court,* 22 Wn.2d 811, 817, 157 P.2d 938, 160 A.L.R. 692 (1945). This interest is specifically enunciated in the "power to lay and collect taxes". U.S. Const. art. 1, § 8. *See* Const. art. 7. While the government did not need to collect the $89 immediately, it already had given the taxpayer years to satisfy the deficiency voluntarily.

Because money in bank accounts is fungible, there is no damage to the specific property taken. While removing assets from a checking account without warning could cause outstanding checks to be returned for insufficient funds or otherwise cause cash flow hardships, this plaintiff knew months in advance of his tax deficiency so could have protected against this possibility. As previously stated, plaintiff was given an administrative hearing at which time he presented evidence in his behalf. This preseizure hearing is, in fact, more meaningful than an ex parte warrant proceeding before a neutral magistrate would be. In addition, because the levy occurred away from plaintiff's home or office, the intrusion into his security and privacy is somewhat lessened. *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). In balance, the levy was reasonable.

By removing Peters' bank funds the Department also effected a taking of property, subject to Fifth and Fourteenth Amendment due process protection. It is recognized that in the context of tax seizures away from the taxpayer's premises, the constitutional balances for determining due process and Fourth Amendment protection are similar. *G.M. Leasing Corp. v. United States, supra* at 352 n.18.

I concur with the majority's finding that the Department's procedures comported with due process. *See Commissioner v. Shapiro,* 424 U.S. 614, 630–33, 47 L. Ed. 2d 278, 96 S. Ct. 1062 (1976).

## III

Finding that the Fourth Amendment applies while offering no protections beyond those already required by due process, questions are legitimately raised as to the import of the holding.

First, the Fourth Amendment's warrant requirement should be understood as a preventative mechanism for protecting Fourth Amendment rights rather than a limitation on the coverage of the amendment. The fact that the probable cause/neutral magistrate requirement has little meaning in the context of an administrative determination filed with the court which is given a presumption of correctness, should not dictate the bounds of the interests protected against unreasonable search and seizure.

Second, because bank accounts are centrally tied to persons' welfare, unreasonable tampering could give rise to a constitutional action in tort, as in *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 29 L. Ed. 2d 619, 91 S. Ct. 1999 (1971). The Fourth Amendment would protect against an RCW 82.32.235 notice to withhold and deliver which exceeded the amount of the claimed deficiency, *cf. United States v. Dionisio,* 410 U.S. 1, 35 L. Ed. 2d 67, 93 S. Ct. 764 (1973) (condemning grand jury subpoena's too sweeping in its terms "to be regarded as reasonable").

The Fourth Amendment's standard of "reasonableness" might provide more protection before a search and seizure than the due process clause, which allows government seizure of taxpayers' assets without a preseizure hearing. *Fuentes v. Shevin,* 407 U.S. 67, 92, 32 L. Ed. 2d 556, 92 S. Ct. 1983 (1972). Because of the orientation of the Fourth Amendment towards preventing unreasonable searches and seizures before they occur, as evidenced by its usual warrant requirement, the provision might require a prior administrative hearing as was given Peters.

Therefore, an unreasonable denial of an assessment conference, RCW 82.32.160 might give rise to a Fourth Amendment violation. Without this hearing at which he appeared and presented evidence, levying Peters' bank

account without the involvement of a neutral magistrate might have been unreasonable and in violation of the constitution.

ROSELLINI, J., concurs with BRACHTENBACH, C.J.